The STATE ex rel. PINSON

v.

INDUSTRIAL COMMISSION OF OHIO et al.

[Cite as *State ex rel. Pinson v. Indus. Comm.*, 155 Ohio App.3d 270, 2003-Ohio-6074.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–89.

Decided Nov. 13, 2003.

272

Gallon & Takacs Co., L.P.A., and Theodore A. Bowman, for relator.

Jim Petro, Attorney General, and Jacob Dobres, Assistant Attorney General, for respondent Industrial Commission of Ohio.

Marshall & Melhorn, L.L.C., and David L. O'Connell, for respondent Auburndale Company.

_____

SADLER, Judge.

{¶ 1} Relator, Michael Pinson, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order finding him ineligible for temporary total disability ("TTD") compensation.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.)

{¶ 3} In her decision, the magistrate recommended that this court grant a limited writ ordering the commission to vacate its July 2002 [1] order to the extent it found that relator had voluntarily abandoned his employment as of June 5, 2002, because the order does not comply with the requirements of *State ex rel.*

_____

1. The magistrate's order contains a typographical error incorrectly identifying this order as having been issued in July 2003.

*Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245, and *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 6 OBR 531, 453 N.E.2d 721. The magistrate also recommended that the remainder of the commission's order be left undisturbed and that the commission be ordered to hold a new hearing on the voluntary-abandonment issue. Relator, respondent-commission, and respondent-Auburndale Company have each filed objections to the magistrate's decision.

{¶ 4} Relator contends that the magistrate erred in her application of *State ex rel. McCoy v. Dedicated Transport, Inc.,* 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51. An employee who voluntarily abandoned his or her former position of employment, or was terminated under circumstances that amount to a voluntary abandonment, will be eligible to receive TTD compensation "if he or she *reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.*" (Emphasis added.) *McCoy,* syllabus. "It is important to note that *this holding is limited to claimants who are gainfully employed at the time of their subsequent disabilities.*" (Emphasis added.) Id. at ¶ 40.

{¶ 5} There is no evidence in the record to show that relator has either (a) become temporarily and totally disabled while working at his new job, or (b) reentered the workforce at all. Thus, the *McCoy* application of the voluntary-abandonment standard does not pertain to the facts of this case.

{¶ 6} Relator contends that the magistrate erred in failing to order the commission to award TTD compensation to him as a matter of law because there is no evidence in the record that he violated a written work rule of his employer, which is an element of the standard set forth in *State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469.[2] Respondent-commission objects on the basis that the magistrate effectively imposed the *Louisiana–Pacific* standard to this case, even though she expressly found that it did not apply here. Respondent–Auburndale's objection is based on the claim that the magistrate did not apply the voluntary-abandonment standard set forth in *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533. Because these objections are interrelated, they will be discussed together.

{¶ 7} The employer in *Louisiana–Pacific* was able unilaterally to establish the standards the employee must meet, determine what constitutes a violation, and

---

2. In *Louisiana–Pacific,* the court stated that when an employee is terminated for violating a written work rule or policy that (1) clearly defines the prohibited conduct; (2) had been previously identified by the employer as a disciplinable offense; and (3) was known or should have been known to the employee, then the termination can be characterized as "voluntary." *State ex rel. Nelson v. Indus. Comm.,* Franklin App. No. 02AP–1009, 2003-Ohio-4367, 2003 WL 21962569.

assess a penalty, including termination. The *Louisiana–Pacific* court required a violation of a written work rule in order to safeguard against the potential abuse of such unilateral power, by enabling the employment standards (and their application) to be reviewed for workers' compensation purposes. *State ex rel. McKnabb v. Indus. Comm.* (2001), 92 Ohio St.3d 559, 562, 752 N.E.2d 254. By contrast, in this case, the work rule that is alleged to have been violated, and its possible consequence, were not established unilaterally by the employer.

{¶ 8} We have carefully reviewed the magistrate's determination that the voluntary abandonment standard set forth in *Louisiana–Pacific* does not apply to these facts, and we agree. While the voluntary-abandonment standard has been applied to various fact patterns over the years, in each of these cases, the Ohio Supreme Court has returned to the basic two-part inquiry it set forth in *Ashcraft*, supra. See, e.g., *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 19, quoting *Ashcraft* at 44.

{¶ 9} Respondent-commission states that "a remand * * * would compel a vain act" because the evidence that supports the commission's order is already in the record. Evidence that is "in the record" but is not referred to in the commission's order is not evidence that this court can consider in reviewing the commission's decision. Respondent–Auburndale also asks this court to accept as fact an admission that was not in the commission's order and apparently was made only in relator's appellate brief. Relator's admission in his brief that his union suspension resulted from his failure to attend apprenticeship classes and his failure to explain why he was not attending them is outside the four corners of the commission's order and simply cannot be considered. *Noll.*

{¶ 10} For the reasons outlined above, the objections of relator, respondent-commission, and respondent-Auburndale are overruled. Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including its findings of fact and conclusions of law.

{¶ 11} Accordingly, we issue a limited writ of mandamus, ordering the commission to vacate its July 2002 order insofar as it found a voluntary abandonment of employment on June 5, 2002 (leaving the remainder of the order undisturbed), to hold a new hearing on this issue, and to issue an order either granting or denying the request for TTD compensation beginning June 5, 2002, in compliance with the above-cited authorities.

Objections overruled
and limited writ granted.

BOWMAN and KLATT, JJ., concur.

## (APPENDIX A)

### In Mandamus

P.A. DAVIDSON, Magistrate.

{¶ 12} In this original action, relator, Michael A. Pinson, asks this court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate its decision finding that he was ineligible for temporary total disability ("TTD") compensation due to a voluntary abandonment of employment, and to issue a new decision addressing the request for compensation.

### Findings of Fact

{¶ 13} 1. In July 2000, Michael A. Pinson ("claimant") suffered an industrial accident, and his workers' compensation claim was allowed for a fractured leg and sprains of the cervical, thoracic, and lumbar spine.

{¶ 14} 2. In October 2000, claimant returned to work as an apprentice ironworker, resuming his regular duties after six months of light duty.

{¶ 15} 3. In February 2002, claimant suffered a flare-up of his back conditions. In a series of C–84 forms, claimant's physician, George N. Darah, D.O., certified that claimant was unable to perform his regular duties due to allowed back conditions from February 21, 2002, through March 15, 2002; and from April 5, 2002, through March 20, 2003. (Claimant worked on March 21 and 22, 2002, and on April 4, 2002.)

{¶ 16} 4. In May 2002, claimant's C–84 requests for TTD compensation were heard by a district hearing officer, and an appeal followed.

{¶ 17} 5. On June 5, 2002, the Toledo Area Ironworkers Joint Apprenticeship Training Committee ("Ironworkers Committee") completed a form provided by the Bureau of Apprenticeship and Training, U.S. Department of Labor, stating that claimant had engaged in "unsatisfactory performance" on June 5, 2002. Claimant signed the form.

{¶ 18} 6. On June 20, 2002, Kaye Brazier, the training coordinator for the Ironworkers Committee, sent the following letter to claimant:

{¶ 19} "You have been suspended from the Apprenticeship Training Program by action of the Joint Apprenticeship Committee for failing to comply with the terms for apprentices outlined in the Toledo Area Ironworkers Joint Apprenticeship Training Standards.

{¶ 20} "You are no longer permitted to attend class or work as an ironworker apprentice. All appropriate agencies will be notified of this action."

{¶ 21} 7. Claimant, in his brief, says that he was suspended from the apprenticeship program "due to failure to attend classes and failure to report to the Ironworkers' apprenticeship program and explain why he was not showing up."

{¶ 22} 8. The parties do not dispute that, due to claimant's lack of union membership in good standing, the employer had no choice but to terminate claimant's employment as an ironworker apprentice.

{¶ 23} 9. In July 2003, a staff hearing officer ("SHO") rendered a decision addressing various periods of TTD. In pertinent part, the SHO awarded TTD compensation from April 30, 2002, through June 4, 2002, but denied compensation for the period beginning June 5, 2002:

{¶ 24} "Dr. Darah extended claimant's disability through 05/21/2002. The claimant then went to Dr. Darah's office for a follow-up examination on 05/22/2002. Dr. Darah then extended claimant's disability from 05/22/2002 through 06/22/2002.

{¶ 25} "However, in the interim, the claimant was '*suspended*' from the Apprenticeship Training Program of the Toledo Area Iron Workers, due to 'unsatisfactory performance'.

{¶ 26} "This finding is based upon the 06/20/2002 letter from C. Kaye Brazier, the Training Coordinator for the Iron Workers' Joint Apprenticeship Training Committee.

{¶ 27} "Therefore, further Temporary Total Disability Compensation is hereby GRANTED from 04/29/2002 through 06/04/2002, *only.*

{¶ 28} "This award is based upon the office notes of George N. Darah, D.O., from 03/21/2002 through 05/22/2002, as well as the disability slips completed by Dr. Darah, dated 05/21/2002, 04/05/2002, 04/11/2002, 04/15/2002, and 05/22/2002.

{¶ 29} "It is the order of this Staff Hearing Officer that Temporary Total Disability Compensation shall be terminated on 06/05/2002.

{¶ 30} "This termination is based upon the claimant's suspension from the Iron Workers' Apprenticeship Program, due to 'unsatisfactory performance', effective 06/05/2002.

{¶ 31} "The employer in this claim is a union employer and the bargaining unit contract prohibits the employer from employing the claimant unless he is a member, in good standing, of the Iron Workers' Union on the Apprenticeship Training Program.

{¶ 32} "Thus, the claimant's own voluntary actions, which led to his suspension, amount to a 'voluntary abandonment' of his former position of employment, so as to bar the payment of Temporary Total Disability Compensation.

{¶ 33} "Therefore, Temporary Total Disability Compensation is hereby DENIED, from 06/05/2002 through 07/03/2002.

{¶ 34} "This order does *not* act as a bar to the future payment of Temporary Total Disability Compensation *if* the claimant's *suspension*, from the Iron Workers' Apprenticeship Training Program, is lifted subsequent to this order." (Emphasis sic.)

### Conclusions of Law

{¶ 35} It is well established that, when a loss of wages is caused by a worker's voluntary choices rather than the industrial injury, he is not eligible for TTD compensation until such time as he reestablishes his eligibility by returning to wage-earning employment. E.g., *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533 (stating that, where an employee's own actions, for reasons unrelated to the injury, preclude him from returning to his employment, he is not entitled to TTD benefits, because it is the worker's own actions rather than the injury that precludes return to the former position); *State ex rel. Baker v. Indus. Comm.* (2000), 89 Ohio St.3d 376, 732 N.E.2d 355; *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51; *State ex rel. Schack v. Indus. Comm.* (2001), 93 Ohio St.3d 247, 754 N.E.2d 802.

{¶ 36} For example, a worker who voluntarily resigns from his job is ineligible for subsequent TTD compensation until he reenters the workforce. *Baker*, supra. Likewise, the voluntary choices that lead to incarceration—and the consequent loss of wages—will preclude TTD compensation. Although incarceration is not typically a voluntary situation, the courts presume that a person accepts the consequences of his actions, and, therefore, when a worker's violation of the law removes his ability to earn wages, he is not eligible for TTD compensation during the incarceration because his own actions prevented him from being able to earn wages. *Ashcraft*, supra. Although the worker in *Ashcraft* presented evidence that he was unable to perform his former position of employment due to his allowed conditions, he was nonetheless ineligible for TTD compensation because he had removed himself voluntarily from the ability to be employed in his former position of employment. Id. The magistrate notes that the holding in *Ashcraft* has since been certified by *Baker*, supra, which indicates that, upon returning to work after a voluntary relinquishment of employment, the worker is again eligible for TTD. See *State ex rel. David's Cemetery v. Indus. Comm.* (2001), 92 Ohio St.3d 498, 751 N.E.2d 1005.

{¶ 37} As with incarceration, a discharge from employment is not generally thought to be voluntary, but a discharge may be characterized as voluntary when the employment was terminated because the worker violated a clear, known rule. *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 623 N.E.2d 1202. In *State ex rel. Louisiana–Pacific Corp. v.*

*Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469, the court ruled that the employer's discharge of a worker can constitute a voluntary relinquishment of employment where the worker violated a written rule or policy, where the rule/policy (1) clearly defined the prohibited conduct, (2) identified the violation as a dischargeable offense, and (3) was known to the worker or should have been known to him. Because some employers may be motivated to terminate an injured worker's employment, it is important under *Louisiana–Pacific* that, where the employer has initiated the termination of employment for violation of the employer's rule, the rule must be clear and in writing. Id.; *State ex rel. Smith v. Superior's Brand Meats, Inc.* (1996), 76 Ohio St.3d 408, 667 N.E.2d 1217. In addition, where the allowed conditions caused the violation of the employer's rule, the conduct was not voluntary. *State ex rel. Pretty Products, Inc. v. Indus. Comm.* (1996), 77 Ohio St.3d 5, 670 N.E.2d 466.

{¶ 38} The question of voluntary relinquishment of a job is primarily one of the worker's knowledge and intent, which may be inferred from words spoken, acts done, written documents, and all the relevant circumstances. E.g., *State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.* (1989), 45 Ohio St.3d 381, 544 N.E.2d 677. The voluntariness of losing one's job may be inferred from evidence that (1) the worker knew or should have known of the consequences of engaging in certain acts or omissions, combined with evidence that (2) the worker then proceeded to engage in those acts/omissions, and that (3) the worker's conduct was not causally related to the industrial injury. *Ashcraft; Baker; Louisiana–Pacific.*

{¶ 39} In the present action, claimant was prevented from returning to his former position of employment as an ironworker because a condition or prerequisite of employment was that the worker must be a union member or apprentice in good standing. When the union suspended him from the apprentice program, he was precluded from returning to his former position of employment, regardless of his medical condition.

{¶ 40} Respondents highlight certain facts: that the employer did not initiate the discharge, but that claimant was removed from work eligibility by a third party; that the third party who removed claimant from employment was his own union; and that this case involves no violation of an employer's rule but claimant's failure to meet a prerequisite for employment, to wit, union membership. Accordingly, respondents argue that the precise holding of *Louisiana–Pacific* is not applicable in this case and that the principles in *Ashcraft* should apply.

{¶ 41} The magistrate agrees that the specific requirements set forth in *Louisiana–Pacific* are not entirely applicable here because the employer did not

initiate a discharge based on its unilateral determination of a violation of its own rule. Rather, the union suspended claimant, preventing the employment. Thus, as in *Ashcraft*, a separate and distinct third party removed claimant from the employment.

{¶ 42} The fundamental question in this matter is the causation of claimant's loss of ability to earn wages as an ironworker. The parties agree that none of the cited cases is substantially like the present case. Nonetheless, certain fundamental principles from all of the cited cases are applicable here. The rationale of *Ashcraft, Louisiana–Pacific,* and related decisions is that a worker will be held to accept the consequences of his actions where the consequences were known to him beforehand or should have been, and where the worker's actions were voluntary, i.e., not caused by the industrial injury.

{¶ 43} To hold a worker accountable for his own choices is fair and reasonable, and the commission's task is to determine what may fairly be inferred from each claimant's conduct at the time he engaged in that conduct. *Smith,* 76 Ohio St.3d at 411, 667 N.E.2d 1217 (stating that the commission must consider the underlying facts and circumstances of each case to determine whether the discharge may be deemed a voluntary departure for TTD purposes); *State ex rel. Walters v. Indus. Comm.* (June 25, 2002), Franklin App. No. 01AP–1043, 2002 WL 1377817 (adopting magistrate's decision, including the conclusion that the commission must examine the nature of the specific consequences that the worker may be deemed to have accepted when he engaged in the conduct at issue). For example, in *Louisiana–Pacific,* it was fair to infer that the injured worker knew that he had been found medically capable of returning to work and that he also knew that if he did not report for work or call in, he would be fired. In *Ashcraft,* the injured worker knew or should have known that if he violated the criminal law, he could be caught and incarcerated, thus preventing his return to the former position of employment.

{¶ 44} In the present action, the good faith of the employer is unquestioned. However, the commission's primary focus must be on the inferences that may reasonably be drawn from the *worker's* conduct:

{¶ 45} "* * * [T]he employer's motives are not the central issue under *Louisiana–Pacific.* Evidence regarding the employer's good faith does not conclusively establish an abandonment of employment *by the worker* that bars eligibility for TTD compensation. When considering abandonment of employment, the commission's primary focus is not upon the employer's good faith or lack thereof but upon the worker's knowledge of consequences of certain behavior and whether he or she nonetheless engaged in that behavior voluntarily. In a mandamus action such as this one, the court does not address whether the

employer had the right to discharge a worker * * *. Rather, the issue is whether the claimant voluntarily and knowingly relinquished her job in such a manner that her subsequent loss of wages [was] the result of her own choice, not the industrial injury." *State ex rel. Johnson Controls Battery Group, Inc. v. Jeffries* (Dec. 31, 2001), Franklin App. No. 01AP–797 (Magistrate's Decision), adopted Apr. 30, 2002 (Memorandum Decision).

{¶ 46} Accordingly, in the present action, the primary issues for the commission were what the claimant knew or should have known regarding the union's rules and their consequences, and the nature of the choices that he made, that is, the acts or omissions that were deemed to constitute a violation of those rules and whether they were voluntary. Further, the commission must determine whether the required or prohibited conduct—and the consequences—were clearly delineated, because the commission cannot otherwise infer from the worker's conduct his acceptance of the consequences. E.g., *State ex rel. McKnabb v. Indus. Comm.* (2001), 92 Ohio St.3d 559, 752 N.E.2d 254. The magistrate concludes that, even though all of the safeguards of *Louisiana–Pacific* need not be imposed in these circumstances because the employer did have a choice in the termination of employment, it is important with matters of constructive intent to determine what may fairly be inferred from a claimant's conduct at the time he engaged in it, and the commission must adequately identify and explain its findings on those issues in its decision, pursuant to its usual duty to explain its reasoning as set forth in *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245, and *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 6 OBR 531, 453 N.E.2d 721. See, e.g., *Walters*, supra.

{¶ 47} Two items of evidence are in the record: a notice from the union on June 5, 2002, stating that "unsatisfactory performance" had occurred, and a letter of June 20, 2002, stating that claimant was suspended from the union's apprentice program "for failing to comply with the terms for apprentices" as outlined in a training standards manual.

{¶ 48} In the commission's order of July 2002, the hearing officer did not identify the clearly delineated standards that claimant failed to meet, nor did the hearing officer identify the evidence demonstrating that claimant knew or should have known of the consequences of his acts or omissions. Indeed, the order does not identify the acts or omissions; instead, the hearing officer simply stated that there were "voluntary actions" leading to the suspension.

{¶ 49} The magistrate concludes that the order does not comply with the requirements of *Noll* and *Mitchell.* Because the commission did not identify the acts or omissions that constituted the claimant's voluntary conduct that led to his suspension and did not explain how the claimant should have known that his

conduct would lead to loss of his job, the explanation is insufficient to permit judicial review, and a writ is warranted. If the hearing officer relied on specific testimony from the claimant or the employer's representative, both of whom attended the hearing, it was obliged to say so.

{¶ 50} Claimant is not entitled to a full writ. The magistrate rejects claimant's argument that the evidence cannot support a voluntary relinquishment of the former position of employment as a matter of law. In his brief in mandamus, claimant indicates the reasons leading to his union suspension (that he failed to attend classes or make required contacts with the union), and, apparently, these reasons were the subject of testimony during the hearing. However, this evidence is not in the record before this court, and, in any event, it is not the court's role in mandamus to make findings of fact or to evaluate the weight and credibility of evidence. E.g., *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936.

{¶ 51} Accordingly, the magistrate recommends that this court grant a limited writ directing the commission to vacate its order of July 2003 insofar as it found a voluntary abandonment of employment on June 5, 2002 (leaving the remainder of the order undisturbed), to hold a new hearing on this issue, and to issue an order granting or denying the request for TTD compensation beginning June 5, 2002, in compliance with the above-cited authorities.

/s/ P.A. Davidson
P.A. DAVIDSON
MAGISTRATE