DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} In this original action, relator, Charlie Williams, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him temporary total disability ("TTD") compensation and enter an order granting said compensation beginning December 15, 2003. The magistrate has recommended the writ be denied. Relator filed objections to that recommendation. For the reasons that follow, the objections are overruled and the writ is denied.
 {¶ 2} Relator injured his left knee on February 13, 2001, while employed as a tractor-trailer driver for Coca-Cola. He subsequently underwent surgery on the left knee and filed a claim for workers' compensation based on the injury. Relator returned to work in June 2001. The district hearing officer ("DHO") allowed a claim for left medial meniscus tear and awarded TTD compensation for the four months relator was absent from work. The decision was administratively affirmed.
 {¶ 3} Due to an unrelated condition, relator became disabled and unable to work beginning March 1, 2002. In June 2002, relator took a length of service retirement from Coca-Cola. He has not returned to the work force since.
 {¶ 4} In January 2003, relator underwent total left knee arthroplasty. Thereafter, in August 2003, the commission allowed the addition of traumatic arthropathy of the left knee to relator's original 2001 claim. In December of that same year, relator's doctor certified a period of TTD compensation beginning December 2003 for iliotibial band tendonitis of the left knee. Relator had surgery for that condition in February 2004. In July 2004, the DHO allowed the addition of IT band syndrome of the left knee on the 2001 claim, but denied the requested TTD compensation. On appeal, the staff hearing officer agreed with the denial based on relator's voluntary, nonmedical, retirement. The decision was administratively affirmed; thus, relator has petitioned this court.
 {¶ 5} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate. On May 12, 2005, the magistrate issued his decision, including supportive findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate recommended that this court deny relator's requested writ of mandamus. The magistrate concluded that TTD compensation is appropriate only when a voluntary departure from the work force is followed by a re-entry into the work force and an absence from that new job due to work-related injuries. Since relator has not re-entered the work force, the magistrate held TTD compensation was prohibited.
 {¶ 6} Relator objects to the magistrate's decision. He argues that the magistrate was incorrect in finding he had abandoned the work force entirely by taking a length of service retirement. Relator asserts he did not intend to abandon the entire work force and therefore should still be entitled to TTD compensation. Relator further argues that a claimant on disability at the time of retirement cannot be deemed to have entirely abandoned the job market.
 {¶ 7} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Questions of credibility and the weight to be given evidence are within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 8} When dealing with TTD compensation, the first determination that must be made is whether or not the relator's departure from, or abandonment of, his employment was voluntary. If his abandonment was involuntary (which includes retirement taken because of industrial injuries), TTD compensation would be appropriate. State ex rel. WoosterCollege v. Gee, Franklin App. No. 03AP-389, 2004-Ohio-1898, at ¶ 36-37. On the other hand, if his abandonment was voluntary (which includes retirement for non-industrial injuries), TTD compensation is generally inappropriate.
 {¶ 9} The voluntary nature of relator's abandonment is a factual question which revolves around relator's intent at the time he retired. The Supreme Court of Ohio has directed: "All relevant circumstances existing at the time of the alleged abandonment should be considered. * * * The presence of such intent, being a factual question, is a determination for the commission." State ex rel. Diversitech Gen. PlasticFilm Div. v. Indus. Comm. (1989), 45 Ohio St.3d 381, 383.
 {¶ 10} In this instance, the commission found relator's retirement to be unrelated to his industrial injury and entirely voluntary. The magistrate noted on page 7 of his decision that relator never directly challenged the commission's determination that he voluntarily abandoned his employment. To the extent that there was such a challenge, we need only find some evidence in the record to support the commission's determination that relator's departure was voluntary.
 {¶ 11} Upon review, we hold that the commission's conclusion is supported by some evidence. First, Dr. Lawley's notes from March 20, 2002 indicate that relator was off work due to the thrombosis in his right leg, but with regard to his left knee "he can return to light duty." The doctor's notes from July 15, 2002 indicate that his "left knee is pretty much the same." Therefore, during the period in which relator retired, his left knee was not medically prohibiting him from performing light work. Second, an email provided in the record indicates that Coca Cola viewed relator's retirement as voluntary. Third, in relator's affidavit he states "I can't remember the exact date, but because of all of my disabling conditions, including the left knee, I decided to retire from Coca Cola." Relator testified similarly before the commission indicating he retired due to his many conditions. However, relator also testified he took a regular length of service retirement rather than a disability retirement.
 {¶ 12} It was within the discretion of the commission as fact finder to give weight to and determine the credibility of the evidence before it. While there was some evidence to support relator's theory that he retired due to his left knee, there was also some evidence that his retirement was unrelated to his left knee injuries. The choice between the two was properly made by the fact finder, and we will not now disturb that result. Therefore, we hold the commission did not err in finding relator's retirement/abandonment to have been voluntary.
 {¶ 13} Since relator's abandonment of his employment at Coca Cola was voluntary, an award of TTD compensation becomes less likely. For many years, a worker who voluntarily abandoned his employment was barred entirely from receiving TTD compensation in the future. In State ex rel.McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, at ¶ 39-40, the Supreme Court of Ohio modified that position and held:
[A] claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
It is important to note that this holding is limited to claimants who are gainfully employed at the time of their subsequent disabilities. In contrast, every case that we decided before Baker involved a claimant who had not only voluntarily abandoned the former employment, but who also had no job at the time of the subsequent period of disability. Thus, none of our prior decisions is affected by our holding today, and claimants in those situations will continue to be ineligible for TTD compensation.
 {¶ 14} Relator admits that he has not worked since his retirement from Coca Cola. Under the plain language of McCoy, relator is not eligible for TTD compensation. Since McCoy, the Supreme Court of Ohio and this court have repeatedly emphasized that the claimant must be employed and unable to work during the time period for which TTD compensation is requested. See State ex rel. Jennings v. Indus. Comm. 98 Ohio St.3d 288, 289,2003-Ohio-737; State ex rel. Eckerly v. Indus. Comm. 105 Ohio St.3d 428,429, 2005-Ohio-2587; State ex rel. Salyers v. Techneglas, Inc., Franklin App. No. 03AP-173, 2004-Ohio-555, at ¶ 8; and State ex rel. Pinson v.Indus. Comm. 155 Ohio App.3d 270, 274, 2003-Ohio-6074. Relator's claimed intention to return to the work force when able does not negate the fact that he was unemployed during the period for which he is requesting TTD compensation. Similarly, whether or not relator had/has other injuries that prevent him from working is immaterial to his present claim.
 {¶ 15} Following an independent review of this matter pursuant to Civ.R. 53, we find that the magistrate properly determined the pertinent facts and applied the appropriate law to those facts. Consequently, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Relator's objections are overruled. In accord with the magistrate's recommendation and decision, the requested writ of mandamus is denied.
Objections overruled;
 writ of mandamus denied.
BRYANT and FRENCH, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex re[l]. Charlie Williams, :
 Relator, :
 v. : No. 04AP-1270
Coca-Cola Enterprises, Inc. and : (REGULAR CALENDAR)
Industrial Commission of Ohio, :
 :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on May 12, 2005 Casper Casper, and Douglas W. Casper, for relator.
Vorys, Sater, Seymour Pease LLP, and Rosemary D. Welsh, for respondent Coca-Cola Enterprises, Inc.
Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 16} In this original action, relator, Charlie Williams, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him temporary total disability ("TTD") compensation beginning December 15, 2003, on grounds that he voluntarily abandoned his employment with respondent Coca-Cola Enterprises, Inc. ("Coca-Cola"), and to enter an order granting said compensation.
Findings of Fact:
 {¶ 17} 1. On February 13, 2001, relator injured his left knee while employed as a tractor trailer driver for Coca-Cola, a self-insured employer under Ohio's workers' compensation laws.
 {¶ 18} 2. On March 2, 2001, relator underwent a partial meniscectomy, chondroplasty and extensive synovectomy of his left knee. The surgery was performed by Michael G. Lawley, D.O.
 {¶ 19} 3. On May 7, 2001, relator filed a workers' compensation claim which Coca-Cola contested.
 {¶ 20} 4. On June 1, 2001, relator returned to work as a tractor trailer driver for Coca-Cola.
 {¶ 21} 5. On August 7, 2001, relator saw Dr. Lawley for a follow-up examination for his right knee. Dr. Lawley's office note of that date states: "His knee is still bothering him. I feel that he is doing too much."
 {¶ 22} 6. Following an August 9, 2001 hearing, a district hearing officer ("DHO") allowed the industrial claim for "left medial meniscus tear," and awarded TTD compensation from February 14, 2001 through the date relator returned to work in June 2001. The DHO's order was administratively affirmed on Coca-Cola's appeal.
 {¶ 23} 7. On October 30, 2001, relator saw Dr. Lawley for examination. Dr. Lawley wrote: "His left knee is very weak. He still has some pain and discomfort. Eventually he will need a total knee arthroplasty."
 {¶ 24} 8. On December 27, 2001, relator again saw Dr. Lawley, who wrote:
* * * His left knee is in a status quo position. He will need a total knee arthroplasty at a later date.
* * *
I reviewed the arthroscopy pictures. He has no articular cartilage in the medial femoral condyle and medial patella or patella.
* * * He just recently had prostatic surgery and knee surgery will not be performed at this time.
 {¶ 26} 9. On March 1, 2002, relator was taken off work at Coca-Cola because he had developed thrombosis in his right leg. He was paid sick and accident benefits.
 {¶ 27} 10. On March 20, 2002, relator saw Dr. Lawley, who wrote:
* * * His left knee is doing well. He was back working, however, he did come down with a deep vein thrombosis of his right leg.
At this time he is off work secondary to the deep vein thrombosis. Regarding his left knee, he can return to light duty. He is present off work because of his right knee.
 {¶ 28} 11. On May 8, 2002, relator underwent open heart by-pass surgery.
 {¶ 29} 12. Effective June 1, 2002, at age 62, relator took a length of service retirement at Coca-Cola.
 {¶ 30} 13. On October 6, 2002, relator was awarded Social Security Disability effective August 2002.
 {¶ 31} 14. On January 16, 2003, relator underwent a total left knee arthroplasty performed by Dr. Lawley. Dr. Lawley certified a period of TTD beginning January 16, 2003. Unaware that relator had retired, Coca-Cola's third-party administrator paid TTD compensation from January 16 through April 21, 2003.
 {¶ 32} 15. In August 2003, the commission additionally allowed the claim for "traumatic arthropathy of the left knee."
 {¶ 33} 16. On February 11, 2004, Dr. Lawley completed another C-84 certifying that relator was temporarily and totally disabled beginning December 15, 2003 due to "iliotibial band tendonitis." This C-84 was apparently filed on March 31, 2004.
 {¶ 34} 17. On February 18, 2004, relator underwent a surgical release of the iliotibial band of his left knee.
 {¶ 35} 18. In April 2004, relator moved for recognition of an additional claim allowance described as "IT band syndrome." He also moved for TTD compensation based upon Dr. Lawley's C-84 filed March 31, 2004.
 {¶ 36} 19. Following a July 26, 2004 hearing, a DHO issued an order additionally allowing the claim for "IT band syndrome" of the left knee. However, the DHO denied TTD compensation beginning December 15, 2003.
 {¶ 37} 20. Relator administratively appealed the DHO's order of July 26, 2004.
 {¶ 38} 21. Following a September 9, 2004 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO order. With respect to the request for TTD compensation, the SHO's order states:
It is the order of the Staff Hearing Officer that the C-84 form filed on 03/31/2004 is denied.
The C-84 form requested the Payment of Temporary Total Disability Compensation beginning on 12/15/2003. The Staff Hearing Officer notes that the injured worker retired from his employment at Coca Cola in June of 2002. The employer's attorney submitted an e-mail from the employer indicating that the injured worker's retirement was a length of service retirement and not medically related. The injured worker testified at hearing that there were medical issues occurring at the time of his retirement, but that they were not at all related to the 02/13/2001 industrial injury. Based upon a review of the injured worker's testimony and medical evidence in file, particularly the office note of Dr. Lawley dated 03/20/2002, the Staff Hearing Officer finds that the injured worker's retirement in June of 2002 was a voluntarily [sic] retirement completely unrelated to the 02/13/2001 industrial injury. The Staff Hearing Officer finds that this voluntarily [sic] retirement precludes the payment of Temporary Total Disability Compensation. Therefore, the Staff Hearing Officer orders that the C-84 form be denied.
 {¶ 39} 22. Apparently, at the September 9, 2004 hearing, relator submitted a statement, dated September 7, 2004, stating:
On June 1, 2001 I returned to work after having surgery to repair the tear of the medial meniscus of my left knee. My occupation for thirty five years was a truck driver. At that time I was driving tractor trailers.
The springs on the clutch of a tractor trailer is much different than a standard automobile. It takes more exertion on my left leg to engage the clutch of the truck. This extra pressure was causing severe pain to my weakened left knee.
* * *
I can't remember the exact date, but because of all of my disabling conditions, including the left knee, I decided to retire from Coca Cola. I knew I could never return to driving a truck again because of the left knee problems.
* * *
It was never my intention to take myself out of the job market. I retired from Coca Cola because I knew I could never drive a tractor trailer again, but always intended to return somewhere in a lighter duty capacity.
Since March 1, 2002, I have been totally disabled from work due to either the left knee, thrombosis, or heart condition.
 {¶ 40} 23. On October 1, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO order of September 9, 2004.
 {¶ 41} 24. On November 29, 2004, relator, Charlie Williams, filed this mandamus action.
Conclusions of Law:
 {¶ 42} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 43} According to the September 7, 2004 statement that relator submitted to the SHO:
It was never my intention to take myself out of the job market. I retired from Coca Cola because I knew I could never drive a tractor trailer again, but always intended to return somewhere in a lighter duty capacity.
Pointing to his September 7, 2004 statement, relator asserts in his brief:
* * * It was and remains his intention to return to work for a new employer in a lighter duty capacity that matches his physical limitations, once his industrial injury heals sufficiently to allow this. * * *
(Relator's brief, at 5.)
 {¶ 44} At another point in his brief, relator asserts:
* * * Given that Claimant does not intend to permanently abandon the work force, but waits only for his industrial injury to improve to the point where he can secure lighter duty work with another employer, the fact that he has not secured such employment as of yet because of the condition of his left knee should not hinder his right to such compensation. * * *
Id. at 11.
 {¶ 45} In his reply brief, relator argues:
Since it is clear Williams never intended to abandon the entire work force, a finding that Williams voluntarily left the work force by retiring from Coca-Cola was clearly inappropriate.
Id. at 2.
 {¶ 46} Relator's claims are directly and easily answered by State exrel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, the syllabus of which states:
A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
 {¶ 47} Under McCoy and its progeny, a claimant who voluntarily abandons his or her former position of employment demonstrates that the voluntary abandonment was not intended by the claimant to be an abandonment of the workforce by actually reentering the workforce following the voluntary abandonment. See State ex rel. Rademacher v.Marriott Internatl., Inc., 101 Ohio St.3d 390, 2004-Ohio-1672.
 {¶ 48} Here, relator concedes that he never reentered the workforce following his retirement from Coca-Cola. Accordingly, McCoy answers his claim and bars relief in mandamus.
 {¶ 49} The magistrate notes that relator never directly challenges the commission's determination that he voluntarily abandoned his employment at Coca-Cola. However, relator seems to argue that because his general medical conditions, including his industrial knee injury, have prevented him from searching for work following his retirement at Coca-Cola, he has shown under McCoy and its progeny that he never intended to abandon the workforce. However, under McCoy, a claimant reestablishes his eligibility for TTD compensation following a voluntary retirement by actually reentering the workforce. Because relator has not done so, he has not shown entitlement to relief in mandamus.
 {¶ 50} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.