DECISION
{¶ 1} Relator, OmniSource Corporation, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order awarding respondent Johnny L. Calderwood, Jr. temporary total disability compensation beginning May 10, 2004, and to enter an order denying said compensation on grounds that claimant allegedly voluntarily abandoned his employment.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Applying the Supreme Court's decision in State ex rel. Pretty Products, Inc.v. Indus. Comm. (1996), 77 Ohio St.3d 5, the magistrate determined that, because claimant did not have the capacity for employment at the time of his conviction for driving while under the influence of alcohol, he cannot be deemed to have abandoned his employment by his voluntary actions resulting in the conviction. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator filed objections to the magistrate's findings of fact and conclusions of law, stating:
OBJECTION TO THE MAGISTRATE'S FINDINGS OF FACT
I. The Magistrate erred in finding that OmniSource "unilaterally" terminated Calderwood's temporary total disability compensation effective May 5, 2002, the first day of his incarceration. Compensation stopped by operation of law during the period of Calderwood's confinement. R.C. § 4123.84. Calderwood's voluntary criminal conduct caused his confinement, and the Ohio legislature determined that claimants shall not receive compensation when confined in penal institutions.
OBJECTIONS TO THE MAGISTRATE'S CONCLUSIONS OF LAW
I. The Magistrate erred in finding Calderwood eligible for temporary total disability compensation when penal sanctions prevented him from returning to his former position of employment, irrespective of his industrial injury.
II. The Pretty Products doctrine is limited to terminations based upon conduct related to the industrial injury.
 {¶ 4} We briefly summarize the facts, which indicate that claimant was injured during the course of his employment, was awarded temporary total disability compensation, returned to restricted work where he again was injured, and resumed receipt of temporary total disability compensation.
 {¶ 5} In the midst of his employment injuries, claimant, a truck driver for relator, was charged with operating a motor vehicle while under the influence of alcohol ("DUI"), his second DUI charge. On his entering a not guilty plea, his driver's license was suspended, albeit with occupational privileges; claimant's commercial driver's license ("CDL") expired of its own accord within about two and one-half months of his suspension. On subsequently finding claimant guilty of the alcohol related offense, the court imposed a period of incarceration and suspended claimant's driver's license for a year. Learning of claimant's conviction, relator advised claimant he would be fired unless he produced a valid CDL by a specified date. Because claimant failed to produce a valid CDL, relator terminated claimant's employment and ceased temporary total disability compensation payments when claimant began his five days of incarceration.
 {¶ 6} In its objection to the magistrate's findings of fact, relator disputes the magistrate's statement that relator "unilaterally" terminated claimant's temporary total disability compensation. Rather, relator contends, compensation was stopped by operation of law due to claimant's incarceration. See R.C.4123.84.
 {¶ 7} None of the parties to this action disputes that claimant was not entitled to temporary total disability compensation during the period of his confinement. Although the magistrate's disputed finding has little bearing on our disposition of this case, we sustain relator's objection to the extent of noting that claimant's compensation stopped by operation of law pursuant to R.C. 4123.84 when he began his incarceration.
 {¶ 8} Relator's objections to the magistrate's conclusions of law are interrelated, and we address them jointly. Together they dispute the magistrate's application of two seminal cases: Stateex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42, andPretty Products, supra.
 {¶ 9} In Ashcraft, the injured worker began receiving temporary total disability compensation, but thereafter was incarcerated in West Virginia on a felony charge. Because R.C.4123.54 was not effective at the time of the worker's industrial injury, the Ohio Supreme Court in Ashcraft analyzed the facts in light of this court's decision in State ex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145. In that case, we stated that "[a] worker is prevented by an industrial injury from returning to his former position of employment where, but for the industrial injury, he would return to such former position of employment. However, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position of employment." Id.
 {¶ 10} The Supreme Court determined the crux of Jones Laughlin was a two-part test to ascertain whether an injury qualified for temporary total disability compensation: "[t]he first part of this test focuses upon the disabling aspects of the injury, whereas the latter part determines if there are any factors, other than the injury, which would prevent the claimant from returning to his former position." Ashcraft, at 44. Applying that rationale to the facts before it, the court concluded that "when a person chooses to violate the law, he, by his own action, subjects himself to the punishment which the state has prescribed for that act." Id. Accordingly, unable to say that, but for the injury, the worker would have been able to return to work, the Supreme Court denied temporary total disability benefits to the injured worker.
 {¶ 11} Subsequent to Ashcraft, the Supreme Court decidedPretty Products, where, following an injury, an employee was discharged from her employment for failing to submit an excuse from her doctor. The issue was whether the claimant voluntarily abandoned her employment in failing to abide by the employer's work rules that required submission of an excuse slip. Remanding the case for further consideration before the Industrial Commission, the Supreme Court provided guidance by stating that "a claimant can abandon a former position or remove himself or herself from the workforce only if he or she has the physical capacity for employment at the time of the abandonment or removal." Pretty Products, at 7, quoting State ex rel. Brownv. Indus. Comm. (1993), 68 Ohio St.3d 45, 48.
 {¶ 12} The language of Pretty Products and Ashcraft
renders difficult the disposition of claimant's request for temporary total disability compensation. Claimant contends that under Pretty Products he cannot be deemed to have abandoned his former position of employment by virtue of his DUI conviction because, at the time of the conviction, he did not have the physical capacity to return to his former position of employment. Relator responds, under Ashcraft, that claimant chose to violate the law and subject himself to the punishment which the state prescribed. Because that punishment involved loss of his driving privileges and his CDL, a necessity for his employment with relator, he voluntarily abandoned his employment in the same manner the employee in Ashcraft abandoned his employment as a result of his incarceration. Relator asserts that just as the employee in Ashcraft could not satisfy the but-for test enunciated in Jones Laughlin, so claimant here cannot satisfy that test, as he was unable to return to his former position of employment for reasons other than the industrial injury.
 {¶ 13} The facts of this case fall into the crack betweenPretty Products and Ashcraft. Unlike the employee inAshcraft, claimant's incarceration is not the issue; rather, relator's contentions are premised on punishment outside the realm of incarceration. Unlike the claimant in Pretty Products,
claimant arguably did not violate a work rule related to the industrial injury, but rendered himself unable to work by virtue of having no driver's license as a result of his DUI.
 {¶ 14} Initially, we note that although the staff hearing officer, and the magistrate as well, concluded Ashcraft did not apply to the facts of this case, this court's decision in Stateex rel. Pinson v. Indus. Comm., 155 Ohio App.3d 270,2003-Ohio-6074, indicates that something short of incarceration is sufficient to find a voluntary abandonment of employment. Id. (concluding that application of Ashcraft may be appropriate where the claimant lost his employment for failure to continue in a necessary apprenticeship program). As the magistrate inPinson noted, "[t]he voluntariness of losing one's job may be inferred from evidence that (1) the worker knew or should have known of the consequences of engaging in certain acts or omissions, combined with evidence that (2) the worker then proceeded to engage in those acts/omissions, and that (3) the worker's conduct was not causally related to the industrial injury." Id. at ¶ 38. Here, the record includes evidence that claimant's DUI conviction disqualified him from ever obtaining a CDL. Pursuant to Pinson, if claimant's DUI conviction deprived him of a CDL for life, rendering him unable to ever return to his former position of employment, he could be deemed to have voluntarily abandoned his employment. On the other hand, if his DUI conviction does not negatively affect his ability to renew his CDL, but renewal is hindered by claimant's industrial injury, then a finding of voluntary abandonment may be inappropriate. Thus, a determination of voluntary abandonment hinges on a factual determination as to the impact of the conviction on claimant's ability to renew his CDL.
 {¶ 15} The staff hearing officer's order notes that "[t]he evidence is conflicting regarding the status of the injured worker's Commercial Driver's License. There is evidence in file that, as a result of the second DUI conviction, the injured worker lost his Commercial Driver's License permanently for life. The injured worker contends that he still has the opportunity to reinstate it, however, until he recovers from his injuries, he can't pass the physical examination."
 {¶ 16} Because the staff hearing officer deemed Ashcraft
inapplicable as a matter of law, the staff hearing officer did not resolve the factual dispute as to the impact of claimant's DUI conviction on his ability to renew his CDL. Given this court's decision in Pinson, we cannot conclude that the rationale of Ashcraft is inapplicable as a matter of law, but its application is contingent on the staff hearing officer resolving the evidentiary conflict concerning the impact of the conviction. As a result, we sustain relator's objections to the magistrate's conclusions of law.
 {¶ 17} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts, and we adopt those as our own with the noted modification. For the reasons set forth in this decision, we grant a limited writ, returning this matter to the Industrial Commission for resolution of the evidentiary conflict and determination of claimant's entitlement to temporary total disability compensation.
Objections sustained; limited writ granted.
Klatt, P.J., and French, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : OmniSource Corporation, : Relator, : v. : No. 05AP-377 Industrial Commission of Ohio : (REGULAR CALENDAR) and Johnny L. Calderwood, Jr., : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 28, 2005 Eastman Smith LTD, Thomas J. Gibney and Carrie L.Sponseller, for relator.
Jim Petro, Attorney General, and Lasheyl Sowell, for respondent Industrial Commission of Ohio.
Thompson, Meier Dersom, and Adam H. Leonatti, for respondent Johnny L. Calderwood, Jr.
 IN MANDAMUS {¶ 18} In this original action, relator, OmniSource Corporation ("OmniSource"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding respondent Johnny L. Calderwood, Jr. ("claimant"), temporary total disability ("TTD") compensation beginning May 10, 2004, and to enter an order denying said compensation on grounds that claimant allegedly voluntarily abandoned his employment.
Findings of Fact:
 {¶ 19} 1. On July 1, 2003, claimant sustained an industrial injury to his left knee while employed as a truck driver for OmniSource, a self-insured employer under Ohio's workers' compensation laws. Initially, the industrial claim was allowed for "left knee contusion; ACL tear left knee; medial meniscus tear left knee," and was assigned claim number 03-846406.
 {¶ 20} 2. Claimant continued to work at OmniSource until November 4, 2003, when orthopedic surgeon Jeffrey M. LaPorteertified TTD in advance of knee surgery.
 {¶ 21} 3. On November 19, 2003, claimant underwent an "Alograft Anterior cruciate ligament reconstruction and partial medial meniscectomy." The surgery was performed by Dr. LaPorte.
 {¶ 22} 4. Apparently, OmniSource began paying TTD compensation to claimant beginning November 4, 2003, based upon Dr. LaPorte's disability certifications.
 {¶ 23} 5. On January 1, 2004, at 2:53 a.m., claimant received a traffic citation alleging that he was operating a motor vehicle while under the influence of alcohol in violation of former R.C.4511.19(A)(4). At the time of the offense, claimant was driving his personal motor vehicle.
 {¶ 24} 6. According to a certified journal report of the Toledo Municipal Court, on January 6, 2004, claimant's driver's license was suspended indefinitely and his motor vehicle was ordered immobilized. Claimant entered a plea of not guilty on January 15, 2004.
 {¶ 25} 7. The record here contains the municipal court's journal of proceedings. A handwritten entry of January 15, 2004, states: "[Defendant] granted limited driving privileges for * * * occupation."
 {¶ 26} 8. On February 26, 2004, Dr. LaPorte wrote that claimant could return to work on February 27, 2004, with restrictions. The restrictions were "sit down work only — indoor only — no bending/stooping/squatting/kneeling." Dr. LaPorte also wrote "limit of 20 lb. weight, no climbing."
 {¶ 27} 9. Claimant returned to work at OmniSource on February 27, 2004.
 {¶ 28} 10. On March 2, 2004, while at work at OmniSource, claimant fell down some steps when his knee gave out. He was transported to a hospital emergency room for treatment.
 {¶ 29} 11. On March 3, 2004, Dr. LaPorte certified that claimant was unable to return to work from March 3 to May 2, 2004. OmniSource resumed the payment of TTD compensation beginning March 3, 2004.
 {¶ 30} 12. By letter dated March 30, 2004, OmniSource additionally certified the claim for "cervical and lumbar strains."
 {¶ 31} 13. On March 31, 2004, claimant's commercial driver's license ("CDL") expired of its own accord. Claimant made no attempt to renew his CDL at that time.
 {¶ 32} 14. On April 12, 2004, claimant underwent MRIs of the cervical, dorsal and lumbar spine.
 {¶ 33} 15. On April 20, 2004, OmniSource additionally certified the claim for "C6-7 disc herniation."
 {¶ 34} 16. On April 28, 2004, claimant entered a plea of no contest in the Toledo Municipal Court. The court entered a finding of guilty and sentenced claimant to 30 days in jail, all but five days suspended. The court also placed claimant on probation for one year and suspended his driver's license for one year. The probation and driver's license suspension were from April 28, 2004 to April 28, 2005.
 {¶ 35} 17. Claimant served his five days of incarceration from May 5 through May 9, 2004.
 {¶ 36} 18. On May 10, 2004, claimant received a telephone call from Tony Wright, an OmniSource supervisor. Wright informed claimant that OmniSource had learned of his January 1, 2004 DUI conviction and that claimant would be fired unless he produced a valid CDL by May 12, 2004.
 {¶ 37} 19. By letter dated May 15, 2004 from OmniSource's human resources manager, claimant was informed:
Our records indicate you have received two (2) DUI's. Federal Motor Carrier Regulations state that persons with two (2) DUI's cannot hold a CDL.
We informed you on 5-10-04 that you must present a valid Ohio CDL to us no later than the end of business 5-12-04, or you would be terminated.
You did not respond, therefore, your employment with OmniSource has been terminated effective 5-13-04.
 {¶ 38} 20. OmniSource unilaterally decided to terminate payments of TTD compensation effective May 5, 2004, the first day of claimant's incarceration.
 {¶ 39} 21. On June 2, 2004, claimant moved that the commission order OmniSource to reinstate TTD compensation beginning May 10, 2004.
 {¶ 40} 22. On a C-84 dated June 7, 2004, Dr. LaPorte certified TTD to an estimated return-to-work date of July 22, 2004.
 {¶ 41} 23. Relator's June 2, 2004 motion was heard by a district hearing officer ("DHO") on July 2, 2004. The hearing was recorded and transcribed for the record.
 {¶ 42} 24. At the hearing, OmniSource argued that claimant had voluntarily abandoned his employment at OmniSource and therefore was not entitled to TTD compensation.
 {¶ 43} 25. At the July 2, 2004 hearing, OmniSource submitted a document captioned "Certification of Compliance with Driver's License Requirements." The document was signed by claimant on December 13, 2000. On the document, claimant provided his Michigan driver's license number and its expiration date of March 31, 2004. By his signature, claimant acknowledged that he had read and understood the document which states, in part:
DRIVER REQUIREMENTS: Parts 383 and 391 of the Federal Motor Carrier Safety Regulations contain some requirements that you as a driver must comply with. Those requirements are in effect as of July 1, 1987. They are as follows:
* * *
2) NOTIFICATION OF LICENSE SUSPENSION, REVOCATION OR CANCELLATION: Sections 392.42 and 383.33 of the Federal Motor Carrier Safety Regulations require that you notify your employer the NEXT BUSINESS DAY of any revocation or suspension of your driver's license. In addition, Section 383.31 requires that any time you violate a state or local traffic law (other than parking), you must report it within 30 days to: 1) your employing motor carrier, and 2) the state that issued your license (If the violation occurs in a state other than the one which issued your license). The notification to both the employer and state must be in writing.
(Emphasis sic.)
 {¶ 44} 26. At the July 2, 2004 hearing, OmniSource submitted a copy of its "Driver Policy and Procedure Manual" ("OmniSource handbook"), which was revised effective January 1, 2004. The revised handbook states: "This handbook is the latest revised version of the OmniSource Transport LLC Driver's Handbook. It supersedes previous versions, as well as any memos, bulletins, policy or procedures issued prior to January 1, 2004."
The revised OmniSource handbook further states:
* * * It is the responsibility of the driver to notify their Transportation Manager if they have received a citation for a motor vehicle violation. The driver is responsible for maintaining an acceptable [motor vehicle record] and valid license to operate a commercial vehicle in order to retain their position with the company. * * *
* * *
DUI OR RECKLESS DRIVING CONVICTION — Immediate disciplinary action will be taken up to and including termination.
 {¶ 45} 27. Following a July 2, 2004 hearing, a DHO issued an order stating:
Pay temporary total disability compensation 5/10/04 through 7/2/04 and to continue with proof. This award is based on the disability certifications from Dr. LaPorte, dated 2/24/04 and 5/23/04. Temporary total disability compensation may continue with proof.
Injured worker sustained an injury to his left knee on 7/1/03 when he was hit by a tire. The record shows that injured worker underwent surgery in November 2003 with Dr. Laporte.
Injured worker attempted an unsuccessful return to light duty work on or about 2/27/04. Injured worker found he had difficulty with stairs and sustained further injury on 3/2/04.
On 5/12/04, injured worker was contacted by his employer requesting he provide a valid commercial driver's license. Injured worker was unable to do so and thereafter was terminated by his employer.
The employer suggests that injured worker's discharge under [State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401], violation of a written work rule. The foundation for employer's action was a January 1, 2004 conviction for driving under the influence, see court documents from Toledo Municipal Court on file. On April 28, 2004, injured worker plead no contest and was sentenced to a term of incarceration.
Injured worker's period of incarceration, 5/5/04 through 5/9/04, is not an issue currently before the Commission.
On or about May 12, 2004, the employer requested that injured worker provide a valid commercial driver's license. Injured worker was unable to do so, and thereafter was discharged.
The District Hearing Officer fails to find that injured worker violated a written work rule in effect at the time of his hire, nor on the date of injury. Employer's handbook was revised January 1, 2004, while injured worker was disabled. The District Hearing Officer finds no evidence that injured worker was served a copy of the revised handbook calling for termination under the above-stated fact pattern.
Moreover, the District Hearing Officer finds that current case law interpretation does not provide a solid foundation for abandonment under the above-stated circumstances. The District Hearing Officer cites the case of [State ex rel. PrettyProducts, Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5] and [State ex rel. Brown v. Indus. Comm. (1993), 68 Ohio St.3d 45] stating that an injured worker's ability to abandon his former of [sic] position is contingent upon an actual ability to return to his former position of employment.
For the above-cited reasons, the District Hearing Officer finds that the injured worker did not abandon his former position of employment and temporary total disability compensation is properly payable.
 {¶ 46} 28. Relator administratively appealed the DHO's order of July 2, 2004.
 {¶ 47} 29. Relator's administrative appeal was heard by a staff hearing officer ("SHO") on August 26, 2004. The hearing was recorded and transcribed for the record. Following the hearing, the SHO issued an order stating:
The Order of the District Hearing Officer, from the hearing dated 7/2/2004, is MODIFIED to the following extent.
The C-86 Motion, filed 6/2/2004, is GRANTED to the extent of this Order.
The disputed issued presented to this Staff Hearing Officer for adjudication is the injured worker's entitlement to Temporary Total Disability Compensation (TTDC), from 5/10/2004 to present, and continuing. Due to the complex factual and legal nuances involved, a brief background review is appropriate.
The records reveal that the injured worker sustained a left knee injury on 7/1/2003 when a bouncing tire hit his left knee pinning it against the bumper of a vehicle. The instant claim was allowed for the above captioned left knee conditions. The injured worker continued to work until approximately 11/5/2003, when he was disabled pending surgical intervention. Doctor LaPorte performed left knee surgery on 11/19/2003 involving an anterior cruciate ligament reconstruction and partial medial meniscectomy. The injured worker underwent conservative physical therapy treatment thereafter and remained temporarily and totally disabled from all work activity pursuant to the opinion of the attending surgeon, Doctor LaPorte.
At some point in February, 2004, the injured worker was contacted by the employer to attend a meeting with Mr. Wright, supervisor of trucking services. There was a discussion regarding the injured worker's return to work at restricted duty. The injured worker attempted to obtain restrictions from Doctor LaPorte without success. The employer's representative also contacted Doctor LaPorte and eventually obtained restrictions of "inside sit down work only, with no bending, stooping, squatting, kneeling, climbing, and no lifting greater than 20 pounds".
The injured worker returned to work on 2/27/2004 at a job requiring him to walk outdoors to his work station and climb flights of stairs at various times. On 3/2/2004, while walking down a flight of stairs, the injured worker's left knee gave way and he fell sustaining injuries to his left knee, neck, and back. The Self-Insured employer thereafter additionally recognized this claim for "cervical and lumbar sprains; C6-7 disc herniation" as flow through conditions. The injured worker's attending surgeon, Doctor LaPorte, once again, temporarily and totally disabled the injured worker from any and all work effective 3/3/2004. Once again, the employer contacted Doctor LaPorte's office regarding return to work at restricted duty. Doctor LaPorte provided restrictions of "sit down work only, light duty, and no bending, stooping, squatting, or kneeling" effective 3/7/2004.
Discussions thereafter ensued between legal counsel for the employer and the injured worker. Delay in a return to work until after a prescribed course of physical therapy was apparently entertained by the parties. At any rate, the injured worker never returned to work at light duty after the fall down the steps on 3/2/2004. TTDC was paid from 3/2/2004 until the Self-Insured employer stopped payment on or about 5/10/2004.
On 5/10/2004, Mr. Wright contacted the injured worker about a DUI violation on 1/1/2004. The injured worker apparently had been charged with DUI in the early morning hours of 1/1/2004. The employer became aware of this fact allegedly by reading the newspaper. It was discovered that the injured worker had been incarcerated from 5/5 through 5/9/2004 for his second DUI violation. Mr. Wright demanded that the injured worker provide a valid Commercial Driver's License by 5/12/2004. If not, the injured worker would be terminated. The injured worker advised that he retained" work privileges" and was taking steps to reinstate his Commercial Driver's License. When the injured worker did not provide a valid Commercial Driver's License to Mr. Wright, on 5/12/2004, he was terminated immediately.
After terminating the injured worker, the Self-Insured employer unilaterally stopped payment of TTDC. The employer contended that the injured worker was legally not entitled to TTDC during his five (5) days of incarceration. Further, the termination from the employer, effective 5/12/2004, constituted a "voluntary abandonment of employment" and precluded payment of TTDC.
On 6/2/2004, the injured worker filed the instant C-86 Motion requesting payment of TTDC from 5/10/2004 forward. The issue now comes before this Staff Hearing Officer upon the employer's Appeal from the District Hearing Officer's Order granting payment of TTDC from 5/10/2004 forward.
The medical evidence is uncontroverted that the injured worker was not able to return to work at the former position of employment and is temporarily and totally disabled due to the allowed conditions in the instant claim. The employer asserts the affirmative defense of" voluntary abandonment of employment", as well as an [State ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42] theory of criminal penal sanctions preventing payment of TTDC.
This Staff Hearing Officer finds that the injured worker is NOT entitled to TTDC during his period of incarceration, from 5/5/2004 through 5/9/2004. This is not disputed by the parties.
This Staff Hearing Officer finds the employer's assertion, that the injured worker is not entitled to TTDC pursuant toAshcraft, to be interesting and novel, yet unpersuasive. The injured worker has been convicted twice of DUI violations, both while employed with this employer. The first violation occurred in January of either 2001 or 2002. There is no evidence of disciplinary action or other problems as a result of the first violation. The second violation occurred on 1/1/2004. The injured worker's driver's license apparently was suspended on 1/6/2004. The injured worker did not advise the employer of the suspension. On 3/31/2004, the injured worker's Commercial Driver's License expired of its own accord. Again, the injured worker did not advise the employer about the expiration of his Commercial Driver's License. On 4/28/2004, the injured worker withdrew his not guilty plea and pleaded "not contest". He was sentenced to 30 days in jail with 25 days suspended, 5 days of incarceration, and 18 days of electronically monitored house arrest.
The evidence is conflicting regarding the status of the injured worker's Commercial Driver's License. There is evidence in file that, as a result of the second DUI conviction, the injured worker lost his Commercial Driver's License permanently for life. The injured worker contends that he still has the opportunity to reinstate it, however, until he recovers from his injuries, he can't pass the physical examination.
The employer contends that the criminal penal sanctions caused the injured worker to lose his Commercial Driver's License for life. As a result, he is permanently barred from returning to his former position of employment as a Truck Driver. Therefore, he is not entitled to TTDC. This theory apparently expands theAshcraft decision of no entitlement to TTDC during incarceration. Absent any clear case law or statutory authority to support this theory, this Staff Hearing Officer finds the employer's contention, in this regard, unpersuasive.
This Staff Hearing Officer further finds that the evidence fails to support the employer's affirmative defense of "voluntary abandonment" under Louisiana-Pacific and its progeny. The employer terminated the injured worker effective 5/12/2004 for failure to provide a valid Commercial Driver's License due to conviction for driving under the the [sic] influence. However, there is NO evidence that the injured worker violated a written work rule in effect at the time of his hire, at the time of his injury, nor at the time of his DUI conviction at 2:30 in the morning on 1/1/2004. The employer apparently revised its policy handbook calling for immediate termination based upon the above fact pattern effective sometime on 1/1/2004. Yet there is NO evidence that the injured worker was made aware of the policy.
This Staff Hearing Officer finds point of analysis in this current quagmire to be simple. What was the cause of injured worker's lost wages as of 5/10/2004 forward? The evidence in file is overwhelming that the injured worker was unable to work due to the allowed conditions in the instant claim. The injured worker was clearly temporarily and totally disabled due to the allowed conditions as of the date of his discharge on 5/12/2004. The "criminal act" of a second DUI conviction, resulting five (5) day incarceration, disputed loss of the injured worker's Commercial Driver's License, and termination from employment, were not the cause of the injured worker's lost wages and disability from work from 5/10/2004 to present.
Therefore, it is the order of this Staff Hearing Officer to GRANT payment of TTDC from 5/10/2004 to present, and to continue upon submission of competent proof of disability for the allowed conditions in the instant claim.
All evidence in file was reviewed and considered.
This Order is based upon the C-84 and MEDCO-14 forms of Doctor LaPorte, the treatment records of Doctor LaPorte, and the above analysis.
(Emphasis sic.)
 {¶ 48} 30. On October 22, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of August 26, 2004.
 {¶ 49} 31. On December 27, 2004, the three-member commission mailed an order denying relator's request for reconsideration of the SHO's refusal order of October 22, 2004.
 {¶ 50} 32. On April 15, 2005, relator, OmniSource Corporation, filed this mandamus action.
Conclusions of Law:
 {¶ 51} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 52} In State ex rel. Pretty Products, Inc. v. Indus.Comm. (1996), 77 Ohio St.3d 5, the claimant, Maxine Dansby, sustained an industrial injury in February 1990 which was allowed for "sprain/strain lumbosacral." After a period of absence from work, Dansby returned to her job at Pretty Products.
 {¶ 53} On November 8, 1990, Dansby again left work and went to the hospital because of low back pain. In a series of medical excuse slips, her attending physician, Dr. Magness, certified an inability to return to her former job. The last of these medical slips certified that claimant could return to work on March 1, 1991.
 {¶ 54} Dansby did not return to work on Friday, March 1, 1991, nor did she then produce an excuse slip that extended her disability. Dansby did not report to work on the following Monday or Tuesday and, consequently, she was terminated pursuant to a provision of the Union/Management Agreement.
 {¶ 55} Dansby moved for TTD compensation beginning November 8, 1990 in her first claim. In support, she submitted a June 8, 1991 C-84 based upon an April 26, 1991 examination that certifies TTD beginning November 8, 1990 to an estimated return-to-work date of August 1, 1991.
 {¶ 56} In August 1991, Dansby filed a second workers' compensation claim alleging that she had injured her low back, neck and shoulders on November 8, 1990. Pretty Products refused to certify the second claim, contending that it was a reoccurrence of the first claim. Dansby moved for TTD compensation beginning November 8, 1990 in the second claim.
 {¶ 57} A DHO allowed the second claim for "`aggravation [of] pre-existing lumbo-sacral sprain/strain,'" and denied TTD compensation. Id. at 6. The regional board of review affirmed. On further appeal by Dansby, staff hearing officers modified the DHO order and awarded TTD compensation. The staff hearing officers found that Dansby "`did not voluntarily abandon her former position of employment on 3/4/91 for the reason that she did not timely submit an excuse slip from her doctor.'" Id.
 {¶ 58} Because of the vagueness of the commission's order, the Pretty Products court remanded to the commission for further explanation and clarification of the reasoning supporting the order. The court explained:
The receipt of temporary total disability ("TTD") compensation rests on a claimant's inability to return to his or her former job as a direct result of an industrial injury. State ex rel.Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630, * * * syllabus. However, eligibility may be compromised when the claimant is no longer employed at that job. Once a claimant is separated from the former position of employment, future TTD compensation eligibility hinges on the timing and character of the claimant's departure.
The timing of a claimant's separation from employment can, in some cases, eliminate the need to investigate the character of departure. For this to occur, it must be shown that the claimant was already disabled when the separation occurred. "[A] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal." State exrel. Brown v. Indus. Comm. (1993), 68 Ohio St.3d 45, 48 * * *.
However, such situations are not common, and inquiry into the character of departure is the norm. While voluntary departure generally bars TTD compensation, an involuntary departure does not. State ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44 * * *. In the instant case, the commission found that claimant's departure was involuntary. Review of the commission's order, however, is hindered because it is susceptible of several different interpretations.
Id. at 6-7.
 {¶ 59} Pretty Products is dispositive of the instant action.
 {¶ 60} As previously noted, following his July 1, 2003 industrial injury, claimant continued to work at OmniSource until November 4, 2003, when Dr. LaPorte certified TTD in advance of knee surgery. On November 19, 2003, claimant underwent ACL reconstruction and a partial medial meniscectomy. OmniSource paid TTD compensation beginning November 4, 2003, based upon Dr. LaPorte's disability certifications. Claimant did not return to work until February 27, 2004, when OmniSource obtained from Dr. LaPorte a partial return-to-work release with restrictions. A few days later, on March 2, 2004, claimant fell at work sustaining more injuries. Claimant never returned to work at OmniSource after March 2, 2004.
 {¶ 61} Thus, it is undisputed that claimant was temporarily and totally disabled from November 4, 2003 through February 26, 2004, and was paid TTD compensation for that period by OmniSource under its self-insured program. During that period of TTD, in the early morning of January 1, 2004, claimant received a traffic citation for DUI while operating his personal motor vehicle.
 {¶ 62} OmniSource contends that claimant's voluntary act of driving a motor vehicle while under the influence on January 1, 2004, ultimately resulted in his disqualification to perform his former job as a truck driver and his failure to provide a valid CDL by May 12, 2004, as demanded by OmniSource. According to OmniSource, citing State ex rel. Ashcraft v. Indus. Comm.
(1987), 34 Ohio St.3d 42, when claimant violated the law on January 1, 2004, he may be presumed to have tacitly accepted the consequences of his voluntary act. Thus, OmniSource argues that the January 1, 2004 traffic violation is a voluntary abandonment of employment because it led to his discharge.
 {¶ 63} In effect, OmniSource's argument is that claimant separated himself from his employment on January 1, 2004, when his voluntary act allegedly occurred. However, claimant was already disabled when the voluntary act allegedly occurred. UnderPretty Products, the timing of claimant's alleged separation (January 1, 2004) eliminates the need to investigate the character of the departure.
 {¶ 64} Because of his industrial injury, claimant did not have the capacity for employment on January 1, 2004. Thus, underPretty Products, he cannot be deemed to have abandoned his employment by his voluntary actions on January 1, 2004.
 {¶ 65} Moreover, OmniSource's theory of voluntary abandonment ignores that claimant returned to work at another job at OmniSource following his January 1, 2004 DUI. As previously noted, on February 27, 2004, claimant returned to work at OmniSource under Dr. LaPorte's medical restrictions. Claimant continued to work at OmniSource at alternative employment until he sustained additional injuries in the claim during a fall on March 2, 2004.
 {¶ 66} The syllabus of State ex rel. McCoy v. DedicatedTransport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, states:
A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
 {¶ 67} Assuming arguendo that the DUI violation of January 1, 2004, resulted in claimant's disqualification to work as a truck driver at OmniSource and that a voluntary abandonment is the consequence of claimant's January 1, 2004 act of violating the law, under McCoy, claimant's return to work on February 27, 2004, at another job at OmniSource reinstates his eligibility for TTD compensation.
 {¶ 68} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.