The **STATE** ex rel. **OMNISOURCE CORPORATION**

v.

**SELF–INSURING EMPLOYERS EVALUATION BOARD** et al.

[Cite as *State ex rel. OmniSource Corp. v. Self–Insuring Emps. Evaluation Bd.*, 173 Ohio App.3d 24, 2007-Ohio-4452.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–650.

Decided Aug. 30, 2007.

Eastman & Smith, Ltd., Thomas J. Gibney, and Carrie L. Sponseller, for relator.

Marc Dann, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for respondent Self–Insuring Employers Evaluation Board.

Thompson, Meier & Dersom and Adam H. Leonatti, for respondent Johnny L. Calderwood, Jr.

---

PETREE, Judge.

{¶ 1} Relator, OmniSource Corporation, commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Self–Insuring Employers Evaluation Board ("SIEEB") to vacate its decision finding that relator should have resumed payment of temporary total disability ("TTD") compensation to Johnny L. Calderwood Jr. ("claimant"), immediately after his release from incarceration and that relator's failure to do so constituted an improper termination of claimant's TTD compensation. SIEEB thus determined that claimant's complaint was valid. Relator requests that this court order SIEEB to vacate that finding and to find that claimant's complaint was not valid.

{¶ 2} This court referred the matter to a magistrate of this court, pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate recommended that this court deny relator's request for a writ of mandamus. Relator and claimant filed objections to the magistrate's decision, and, therefore, this matter is now before this court for a full, independent review.

{¶ 3} As summarized by the magistrate, there are only four facts that are pertinent to the resolution of this case: (1) claimant sustained an injury and relator paid him TTD compensation up until the date he was incarcerated, (2) the last C–84 certified TTD compensation through an estimated return-to-work date of May 24, 2004, (3) TTD compensation was lawfully not payable during the time of claimant's incarceration, and (4) relator did not pay TTD compensation to claimant following his release from incarceration until ordered to do so by respondent Industrial Commission of Ohio ("commission").

{¶ 4} By his objection to the magistrate's decision, claimant appears to argue that the magistrate erred in not dismissing the matter on the basis that SIEEB is not a proper party in this action and that the Administrator of the Ohio Bureau of Workers' Compensation ("BWC") is the necessary party. In support of his objection, claimant cites the Supreme Court of Ohio's decision in *Baltimore Ravens, Inc. v. Self–Insuring Employers Evaluation Bd.* (2002), 94 Ohio St.3d

449, 764 N.E.2d 418. According to claimant, *Baltimore Ravens* "seems" to support his conclusion that SIEEB is "not an agency separate and distinct from the Ohio Bureau of Worker's Compensation which is capable of acting as a party to this lawsuit."

{¶ 5} In *Baltimore Ravens*, the court resolved the issue of whether adjudications of SIEEB are subject to judicial review under R.C. 119.12 of the Administrative Procedure Act. In its analysis of this issue, the court observed that SIEEB "is not self-sustaining or self-governing" and is "inextricably entangled with and dependent upon the bureau." Id. at 454, 764 N.E.2d 418. The court also noted that R.C. 4123.352(A) expressly provides: "For administrative purposes, the board is a part of the bureau of workers' compensation." The court concluded that "the board is a part of the bureau for purposes of R.C. 119.01(A), that the exclusion for adjudications by the bureau is applicable to the board, and that the board's adjudications are generally exempt from the provisions of the Administrative Procedure Act, including those in R.C. 119.12 governing the right of appeal to common pleas court." Id. at 456, 764 N.E.2d 418. Accordingly, the court held that disciplinary orders issued by SIEEB pursuant to R.C. 4123.352(C) are not subject to judicial review under R.C. 119.12 of the Administrative Procedure Act. See id. at syllabus.

{¶ 6} Claimant's reliance upon *Baltimore Ravens* is misplaced, because that case did not involve the issue of whether a relator named the proper respondent in a mandamus action. Although the court in *Baltimore Ravens* did decide that SIEEB is a part of the BWC for purposes of determining whether adjudications of SIEEB are subject to judicial review under R.C. 119.12, it did not decide that the Administrator of the BWC must be named as a party in a mandamus action wherein the relator requests a writ ordering SIEEB to take particular action. In addition, our independent research fails to reveal any such requirement under Ohio law.

{¶ 7} R.C. 2731.01 provides that "[m]andamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." Moreover, "[m]andamus is the appropriate remedy where no right of appeal is provided to correct an abuse of discretion by a public body." *State ex rel. Potts v. Comm. on Continuing Legal Edn.* (2001), 93 Ohio St.3d 452, 457, 755 N.E.2d 886. In this matter, relator seeks a writ ordering SIEEB to vacate its decision finding that relator should have resumed payment of TTD compensation to claimant immediately after his release from incarceration and that relator's failure to do so constituted an improper termination of claimant's TTD compensation. However, relator does not seek a

writ of mandamus directed to the Administrator of the BWC. Accordingly, we find claimant's objection to be without merit.

{¶ 8} By its objections, relator contends that the magistrate's findings of fact Nos. 14, 16, 17, 19, and 20 are erroneous or incomplete. In addition, relator argues that the magistrate erroneously concluded that it was required to voluntarily restart TTD compensation after claimant's incarceration and that SIEEB did not abuse its discretion.

{¶ 9} In regard to findings of fact Nos. 14 and 20, relator takes issue with the magistrate's determination that relator "unilaterally" terminated the TTD compensation. Relator argues that the magistrate erroneously characterized the cessation of TTD compensation as a "unilateral" act by relator. According to relator, that alleged mischaracterization tainted the magistrate's analysis in this case. Relator asserts that it was claimant's conduct, his conviction for that conduct, and his incarceration that caused the termination of claimant's TTD compensation. Apparently, relator contends that the act was not unilateral because it was caused by claimant's conduct. Additionally, according to relator, who cites R.C. 4123.46(B), the magistrate misused the term "unilateral" because "a self-insuring employer serves both the role of the employer and the administrator."

{¶ 10} We disagree with relator's contention that the magistrate mischaracterized the act as "unilateral." Relator, as a self-insuring employer, ceased payment of TTD compensation without involvement of the commission, or, contrary to the suggestion of relator, the BWC. Moreover, the fact that relator's decision to cease payment of TTD compensation was in response to claimant's incarceration does not negate the fact that relator acted alone in deciding to cease payment. Thus, the magistrate correctly characterized relator's action as "unilateral."

{¶ 11} Relator argues that the magistrate's finding of fact No. 16 is incomplete. In finding of fact No. 16, the magistrate noted that at the July 2, 2004 hearing before the district hearing officer ("DHO"), relator argued that claimant had voluntarily abandoned his employment and was not entitled to TTD compensation. According to relator, finding of fact No. 16 is incomplete because relator "also argued" at that hearing that claimant was not entitled to TTD compensation because government-imposed sanctions prevented him from returning to work as much as if he continued to be incarcerated. However, relator does not explain why this specific fact is significant in this mandamus action or why it was error for the magistrate to omit it from the findings of fact. Thus, relator's contention as to the completeness of finding of fact No. 16 is unpersuasive.

{¶ 12} Relator argues that the magistrate's finding of fact No. 17 "mischaracterizes" the August 2004 order of the staff hearing officer ("SHO"). Relator argues that the magistrate "conflate[d] two distinct issues" when she made the

following observation: "Because the SHO found that the evidence in the record was conflicting regarding the status of claimant's CDL [Commercial Driver's License], * * * the SHO determined that relator did not present sufficient evidence to support the affirmative defense of voluntary abandonment."

{¶ 13} We agree with relator to the extent it argues that the above observation of the magistrate in finding of fact No. 17 did not accurately reflect the analysis of the SHO regarding claimant's entitlement to TTD compensation following his release from incarceration. Contrary to the magistrate's suggestion, the SHO did not find that the evidence failed to support the affirmative defense of voluntary abandonment under *State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469, and its progeny, because there was conflicting evidence regarding the status of claimant's CDL. The SHO resolved that the evidence failed to support the affirmative defense of voluntary abandonment under *Louisiana–Pacific* and its progeny, because there was no evidence that claimant violated a written work rule in effect at the time of his hiring, at the time of his injury, or at the time of his arrest on January 1, 2004. Additionally, the SHO determined that even though relator apparently revised its policy handbook effective sometime on January 1, 2004, to require immediate termination based on the type of conduct committed by claimant, there was no evidence that claimant was aware of that policy. Because a portion of the magistrate's finding of fact No. 17 does not accurately reflect the SHO's analysis, relator's objection to the magistrate's finding of fact No. 17 is well taken and is sustained.

{¶ 14} As to the magistrate's finding of fact No. 19, relator asserts that it is "incomplete in that it fails to specify that in his self-insured complaint [claimant] did not complain about the lawful termination of his temporary total compensation effective <u>May 5, 2004</u>." (Underlining sic.) Relator asserts that claimant only complained of the "unlawful termination" of his TTD compensation beginning May 10, 2004. In her finding of fact No. 19, the magistrate noted that in the self-insured complaint, which claimant filed on January 27, 2005, claimant alleged "that relator had violated its self-insuring responsibilities by unilaterally terminating his TTD compensation and by failing to reinstate that compensation upon his release from incarceration." In this matter, there is no dispute that claimant was not entitled to TTD compensation for the five days of his incarceration, May 5 to 9, 2004. Thus, it was appropriate for the magistrate not to include in the findings of fact a discussion of what claimant did not allege in his January 27, 2005 self-insured complaint.

{¶ 15} We next address relator's objections to the magistrate's conclusions of law. Specifically, relator argues that the magistrate erroneously concluded that

relator was required to voluntarily restart TTD compensation and that SIEEB did not abuse its discretion.

{¶ 16} Preliminarily, we note that claimant and SIEEB, with this court's approval, have cited supplemental authority, i.e., *State ex rel. OmniSource v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, in this mandamus action. In *OmniSource*, the Supreme Court of Ohio resolved the appeal from this court's decision in *OmniSource*, Franklin App. No. 05AP–377, 2006-Ohio-699, 2006 WL 350209, which was cited by the magistrate in her decision and which arose from the same workers' compensation claim involved herein. As observed by the magistrate, this court, in *OmniSource*, Franklin App. No. 05AP–377, found that the issue of whether claimant was actually entitled to TTD compensation following his release from incarceration could not be determined until the resolution of the factual dispute involving whether claimant could eventually renew his CDL. Thus, this court granted a limited writ ordering the commission to resolve that issue in reconsidering claimant's entitlement to TTD compensation. See id. at ¶ 17. Claimant appealed, and relator cross-appealed, from this court to the Supreme Court of Ohio. When the magistrate rendered her decision in this mandamus action, the other matter was pending in the Supreme Court of Ohio. In *OmniSource*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, the Supreme Court of Ohio reversed the judgment of this court and reinstated the commission's order. The court reasoned that a claimant can abandon a former position of employment only if the claimant was physically capable of doing that job at the time of the alleged abandonment, and in this matter claimant was not so capable. See id. at ¶ 12. Ultimately, however, the issue of whether claimant was entitled to TTD compensation after his incarceration is not dispositive in this mandamus action. The issue here is whether SIEEB abused its discretion when it determined that relator violated self-insured guidelines when it did not resume payment of TTD compensation following claimant's release from incarceration.

{¶ 17} Relator argues that because claimant was not entitled to TTD compensation during his incarceration, TTD compensation could not "continue" after his release, and a new order from the commission was necessary for payment to resume. Relator contends that claimant's incarceration is analogous to a return-to-work situation, and, thus, compensation after the incarceration would require a new administrative determination of entitlement to the compensation. These arguments were adequately addressed by the magistrate. We agree with the magistrate's assessment that relator had been paying claimant TTD compensation based upon medical evidence certifying disability beyond the date claimant was released from incarceration and that this case does not present one of the four statutorily enumerated conditions under which a self-insured

employer may unilaterally terminate TTD compensation without a hearing. Therefore, we further agree with the magistrate's conclusion that SIEEB did not abuse its discretion in finding that claimant's complaint was valid.

{¶ 18} Following our independent review of this matter, we find that the magistrate properly discerned the pertinent facts, notwithstanding her discussion regarding the SHO's reasoning as to why claimant is entitled to TTD compensation, and applied the relevant law to the ultimately significant facts. Thus, we sustain in part and overrule in part the objections of relator. In addition, claimant's objection is overruled. Accordingly, we adopt the magistrate's decision as our own, including the magistrate's findings of fact and conclusions of law, as updated and amplified herein. However, we do not adopt the portion of finding of fact No. 17 discussing the SHO's reasoning for why claimant was entitled to TTD compensation. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

Objections sustained in part
and overruled in part;
writ denied.

SADER, P.J., and BROWN, J., concur.

## APPENDIX A

### MAGISTRATE'S DECISION

Rendered on December 21, 2006

{¶ 19} Relator, OmniSource Corporation, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Self–Insuring Employers Evaluation Board ("SIEEB") to vacate its decision finding that relator should have resumed payment of temporary total disability ("TTD") compensation to Johnny L. Calderwood Jr. ("claimant"), immediately after his release from prison and that relator's failure to do so constituted an improper termination of claimant's TTD compensation. As such, SIEEB determined that claimant's complaint was valid. Relator requests that this court order SIEEB to vacate that finding and to find that claimant's complaint was not valid.

### Findings of Fact

{¶ 20} 1. Claimant sustained a work-related injury on July 1, 2003, and his claim was allowed for the following conditions: "left knee contusion; ACL tear left knee; medial meniscus tear left knee; cervical and lumbar sprains; C6–7 disc herniation." At the time of his injuries, claimant was employed as a truck driver for relator, a self-insured employer under Ohio's workers' compensation laws.

{¶ 21} 2. Following his injury, claimant continued to work for relator until November 4, 2003, when Jeffrey M. LaPorte, M.D., certified a period of TTD in advance of knee surgery.

{¶ 22} 3. Relator began paying TTD compensation to claimant beginning November 4, 2003, based upon Dr. LaPorte's certification of disability.

{¶ 23} 4. On January 1, 2004, claimant received a traffic citation alleging that he was operating a motor vehicle while under the influence of alcohol. At the time of the offense, claimant was driving his own personal motor vehicle. Claimant entered a plea of not guilty on January 15, 2004, and the trial court granted him limited driving privileges for work.

{¶ 24} 5. Claimant returned to work with relator on February 27, 2004, with restrictions as certified by Dr. LaPorte.

{¶ 25} 6. On March 2, 2004, while at work, claimant fell down some steps when his knee gave out. Claimant was transported to a hospital emergency room for treatment.

{¶ 26} 7. On March 3, 2004, Dr. LaPorte certified that claimant was again unable to return to work and relator resumed the payment of TTD compensation. Further, relator additionally certified claimant's claim for certain conditions as a result of the March 2, 2004 injury.

{¶ 27} 8. On March 31, 2004, claimant's commercial driver's license ("CDL") expired of its own accord. Claimant made no attempt to renew his CDL at that time.

{¶ 28} 9. Based upon the results of MRIs taken April 12, 2004, relator additionally certified claimant's claim for additional conditions.

{¶ 29} 10. On April 28, 2004, claimant appeared in the Toledo Municipal Court and entered a plea of no contest. Claimant was sentenced to 30 days in jail, and all but five days were suspended. The court also placed claimant on probation for one year and suspended his driver's license from April 28, 2004 to April 28, 2005.

{¶ 30} 11. Claimant served his five days of incarceration from May 5 through May 9, 2004.

{¶ 31} 12. On May 10, 2004, claimant was informed that as a result of his January 1, 2004 DUI citation and the subsequent conviction, he would be fired unless he produced a valid CDL by May 12, 2004.

{¶ 32} 13. By letter dated May 15, 2004, claimant was terminated effective May 13, 2004, because he had received two DUIs, because federal regulations provide that a person with two DUIs cannot hold a CDL, and because claimant failed to present a valid CDL by May 12, 2004.

{¶ 33} 14. Relator unilaterally terminated claimant's TTD compensation effective May 5, 2004, the first day of claimant's incarceration. Relator did not reinstate claimant's TTD compensation following his release from incarceration.

{¶ 34} 15. On June 2, 2004, claimant filed a motion requesting that the Industrial Commission of Ohio ("commission") order relator to reinstate TTD compensation beginning May 10, 2004, the day after he was released from incarceration. Dr. LaPorte certified that claimant was temporarily totally disabled to an estimated return-to-work date of July 22, 2004.

{¶ 35} 16. Claimant's motion regarding the reinstatement of his TTD compensation was heard before a district hearing officer ("DHO") on July 2, 2004. At that time, relator argued that claimant had voluntarily abandoned his employment and was not entitled to TTD compensation. The DHO issued an order granting claimant TTD compensation beginning May 10, 2004.

{¶ 36} 17. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on August 26, 2004. The SHO modified the prior DHO's order yet granted TTD compensation beginning May 10, 2004 and continuing. The SHO found that the medical evidence was uncontroverted that claimant was unable to return to work at his former position of employment. The SHO further found that claimant was not entitled to TTD compensation during his incarceration. Because the SHO found that the evidence in the record was conflicting regarding the status of claimant's CDL (relator argued that as a result of the second DUI conviction, claimant had permanently lost his CDL, while claimant contended that he still had the opportunity to reinstate his CDL; however, until he recovered from his injuries, he could not pass the required physical examination), the SHO determined that relator did not present sufficient evidence to support the affirmative defense of voluntary abandonment under *State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401 [650 N.E.2d 469], and its progeny and, therefore, granted the payment of TTD compensation from May 10, 2004 and continuing.

{¶ 37} 18. Thereafter, another SHO refused relator's administrative appeal and, on December 27, 2004, the three-member commission mailed an order denying relator's request for reconsideration.

{¶ 38} 19. On January 27, 2005, claimant filed a self-insured complaint, alleging that relator had violated its self-insuring responsibilities by unilaterally terminating his TTD compensation and by failing to reinstate that compensation upon his release from incarceration.

{¶ 39} 20. Ultimately, SIEEB determined that claimant's self-insured complaint was valid. SIEEB noted that claimant had argued that there are only three circumstances under which a self-insuring employer may unilaterally

terminate TTD compensation without a hearing and that neither incarceration nor voluntary abandonment constitutes a basis for unilateral termination. Relator argued that TTD compensation was properly terminated because of claimant's incarceration and that any request for further TTD compensation after his release constituted a new period of compensation to which relator could object. SIEEB noted as follows:

> The Board finds merit with both positions, but adopts neither. The injured worker has properly set forth the proper circumstances under which temporary total disability compensation may be terminated without a hearing, while acknowledging that R.C. 4123.54 prohibits payment of temporary total disability compensation during incarceration. Indeed, the injured worker has never claimed eligibility for temporary total disability compensation for his period of incarceration. When compensation is not payable because of incarceration, and the application of R.C. 4123.54 is not con-tested, the Board finds that there is no authority for such payment, and consequently, no requirement that the self-insuring employer continue payment under such circumstances. On the other hand, neither is there authority for a self-insuring employer to use a 5–day period of incarceration as a triggering event for objecting to a "new" period of compensation, when the medical evidence supporting on-going temporary total disability is uncontested. The Board emphasizes that its decision pertains only to termination of temporary total disability compensation, and must be distinguished from a determination of eligibility for temporary total disability compensation. As of this writing, the matter of elibility [sic] is pending before the Supreme Court on the injured worker's appeal.

{¶ 40} 21. While claimant's complaint was pending before SIEEB, relator filed a mandamus action in this court.

{¶ 41} 22. In *State ex rel. OmniSource Corp. v. Indus. Comm.*, Franklin App. No. 05AP–377, 2006-Ohio-699 [2006 WL 350209], this court found that the factual dispute as to the impact of claimant's DUI conviction on his ability to renew his CDL needed to be resolved before it could be determined whether or not claimant was entitled to TTD compensation following his conviction for DUI.

{¶ 42} 23. On June 28, 2006, relator filed the instant mandamus action requesting that this court find that SIEEB abused its discretion when it found claimant's complaint to be valid.

### Conclusions of Law

{¶ 43} In this mandamus action, this court applies the same standard in reviewing an order from SIEEB that this court does in reviewing orders from the commission. *State ex rel. DaimlerChrysler Corp. v. Self–Insuring Employers Evaluation Bd.*, Franklin App. No. 04AP–1222, 2006-Ohio-425 [2006 WL 242553].

As such, relator must establish that (1) it has a clear legal right to the relief requested, (2) SIEEB is under a clear legal duty to perform the act requested, and (3) relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28 [6 OBR 50, 451 N.E.2d 225].

{¶ 44} In reality, only four facts are relevant in this case: (1) claimant sustained an injury and relator paid him TTD compensation up until the date he was incarcerated, (2) the last C–84 certified TTD compensation through an estimated return-to-work date of May 24, 2004, (3) TTD compensation was lawfully not payable during the time of claimant's incarceration, and (4) relator did not pay TTD compensation to claimant following his release from incarceration until ordered to do so by the commission.

{¶ 45} Pursuant to R.C. 4123.56 and Ohio Adm.Code 4121–3–32, a self-insuring employer is required to pay TTD compensation for a duration based upon the medical reports of the attending physician. In the event that the self-insuring employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a DHO pursuant to R.C. 4123.511(C). Payments are to continue pending the determination of the matter; however, payment shall not be made during the period when any employee has returned to work, when the employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached maximum medical improvement.

{¶ 46} None of the above criteria are met in the present case. As this court noted in relator's first mandamus action, the issue of whether claimant was actually entitled to TTD compensation following his release from incarceration could not be determined until the factual dispute involving whether claimant could eventually renew his CDL. Arguably, claimant remained entitled to TTD compensation until that issue was determined. In essence, relator was challenging claimant's continued entitlement to TTD compensation following his conviction and release from incarceration. Relator and claimant disagreed as to the effect of claimant's conviction on his ability to renew his CDL. Because the period was disputed and none of the four criteria for a self-insured employer to unilaterally terminate TTD compensation were met, the magistrate finds that SIEEB did not abuse its discretion in finding that claimant's complaint was valid.

{¶ 47} Relator continues to make the same arguments in this mandamus action that it had made before, namely, that following his release from incarceration, claimant was actually requesting a new period of TTD compensation and relator

was entitled, by law, to contest his eligibility for such. In *OmniSource Corp.*, at ¶ 13, this court noted:

The facts of this case fall into the crack between [*State ex rel. Pretty Products, Inc. v. Indus. Comm.* (1996), 77 Ohio St.3d 5, 670 N.E.2d 466] and [*State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533]. Unlike the employee in *Ashcraft*, claimant's incarceration is not the issue; rather, relator's contentions are premised on punishment outside the realm of incarceration. Unlike the claimant in *Pretty Products*, claimant arguably did not violate a work rule related to the industrial injury, but rendered himself unable to work by virtue of having no driver's license as a result of his DUI.

{¶ 48} Relator attempts to analogize this factual situation to several other situations. However, none of those analogies are dispositive, and relator does not attempt to argue that they are. Relator also appears to argue that it had a good-faith reason to refuse to pay compensation following claimant's release from incarceration. That may be true and may have influenced SIEEB, since no penalty was imposed on relator. Further, relator points out that SIEEB acknowledged that the arguments on both sides had merit. That is correct and again may explain the lack of any penalty imposed. However, none of relator's arguments change the following factors: relator had been paying claimant TTD compensation based upon medical evidence certifying disability *beyond* the date claimant was released from incarceration. The medical evidence did not change. Further, this situation does not present one of the four statutorily enumerated conditions under which an employer can categorically unilaterally terminate TTD compensation without a hearing. Relator simply cannot show a clear legal right to the relief requested. The payment was in dispute and self-insured employers are supposed to pay compensation while the matter is in dispute.

{¶ 49} Because the question of claimant's entitlement to TTD compensation remained disputed and it was not clear that claimant would not be entitled to that compensation, the magistrate finds that SIEEB did not abuse its discretion in finding claimant's complaint that relator should not have unilaterally terminated his TTD compensation to be valid. As such, the magistrate would deny relator's request for a writ of mandamus.

/s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS
MAGISTRATE