DECISION
{¶ 1} Relator, Karen Ebersole, commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order in which the commission denied her application for temporary total disability ("TTD") compensation on the basis that she had voluntarily abandoned her employment, and to enter a new order finding that she did not voluntarily abandon her employment and that she is medically eligible to receive such compensation for the period beginning October 24, 2002.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission abused its discretion in finding that relator voluntarily abandoned her employment and recommended that this court grant the requested writ of mandamus. The commission filed objections to the magistrate's decision, and the employer, the Ohio Department of Rehabilitation and Correction ("ODRC"), filed its own objections. Relator filed a memorandum opposing the objections. This cause is now before the court for a full review.
 {¶ 3} The record reveals that relator received TTD compensation beginning on January 31, 2002, following an industrial injury she suffered on June 21, 2001. On May 22, 2002, the commission found that relator had reach Maximum Medical Improvement and, therefore, terminated TTD compensation. Though relator initially appealed that determination, she dismissed her appeal in July 2002.
 {¶ 4} Having not seen or heard from relator since she had last worked in January 2002, ODRC advised relator, by letter dated September 18, 2002, that she was not on approved leave and could be considered Absent Without Leave. The letter further advised that if relator failed to (1) file a request for leave with supporting documents or (2) file a request for a leave of absence with supporting documents, by September 25, 2002, then ODRC would institute an investigation for possible violations of work rules. The letter also indicated that ODRC would accept relator's written resignation if she desired not to return to her job.
 {¶ 5} Relator emailed the author of the letter to request an extension of time, which request was denied. She never responded with a request for leave or for leave of absence. Accordingly, following an investigation and pre-disciplinary conference, it was determined that relator had violation Work Rule #4, which defines Job Abandonment as three or more consecutive workdays without proper notice. Specifically, the pre-disciplinary hearing officer determined, in a report dated October 21, 2002, that relator had abandoned her job as of September 25, 2002. Relator has never argued that she was unaware of Work Rule #4 or of the consequences of failing to follow it. ODRC terminated relator on October 24, 2002. She later filed a grievance based on her termination, and on August 20, 2003, an arbitrator determined that relator had failed to fulfill her obligation to secure proper approval for a leave of absence.
 {¶ 6} Meanwhile, on November 11, 2002, relator underwent pre-approved arthroscopic knee surgery under a separate claim arising from a 1998 work-related injury. She submitted a request for TTD in the 1998 claim, along with an October 29, 2002 C-84 from her treating physician, which certified that she was temporarily and totally disabled from May 2, 2002 through an estimated return-to-work date of January 31, 2003. This motion was administratively denied at all levels based on a finding that relator had voluntarily abandoned her employment.
 {¶ 7} On December 30, 2003, relator again moved for TTD based on Dr. Spare's C-84 certifying her as temporarily and totally disabled from May 21, 2002 through April 1, 2004, due to the allowed condition of post-traumatic stress disorder. Relator's motion was denied at all administrative levels for the period from October 24, 2002 (the date relator was fired) through April 1, 2004. Once again, denial was premised upon voluntary abandonment. The commission accepted the C-84 and found that relator was temporarily and totally disabled for the period covered thereby, but allowed TTD only for the pre-termination portion and denied TTD for the post-termination portion.
 {¶ 8} This mandamus action followed. The basis of relator's complaint is that it was an abuse of discretion to find that she voluntarily abandoned her employment because she could not have done so while she was incapable, due to her allowed conditions, from returning to her former position.
 {¶ 9} The magistrate recognized that when ODRC sent its September 18, 2002 letter and when it initiated disciplinary proceedings, relator had given ODRC no indication whatsoever that she was disabled due to her allowed conditions. Yet she had still, inexplicably, failed to present herself for work and failed to contact the employer to explain her absence or request approved leave. The magistrate thus concluded, "[t]he evidence shows the employer had a valid reason to terminate relator's employment[.]" (Mag. Dec., infra, at ¶ 57.)
 {¶ 10} Yet the magistrate concluded that, because relator was later determined to have been temporarily and totally disabled up to, including, and beyond the time she was terminated for violation of ODRC's No Call/No Show policy, "although the employer established a valid reason to discharge relator, that discharge, in and of itself, does not constitute a `voluntary abandonment' pursuant to [State ex rel.] Louisiana Pacific
[v. Indus. Comm. (1995), 72 Ohio St.3d 401, 650 N.E.2d 469] * * *." (Id. at ¶ 60.) In essence, the magistrate concluded that the later finding that relator's allowed conditions caused her to be disabled somehow "trumps" the earlier finding that relator's total loss of earnings for the relevant period was caused not by the allowed conditions but by voluntary abandonment of her employment.
 {¶ 11} In its objections, the commission argues that the magistrate erred in finding there was no voluntary abandonment because relator's termination meets the test for a voluntary abandonment articulated in Louisiana Pacific. The commission also argues that there is no support for the magistrate's conclusion that a later finding that relator was temporarily and totally disabled covering the time period including and following the termination is unaffected by the earlier finding that her loss of earnings is attributable to knowing and voluntary violation of a work rule.
 {¶ 12} According to the commission, relator's failure to appear for work and to contact the employer regarding her absences is no different from the employee's violation of the employer's drug-use policy in State ex rel. Cobb v. Indus.Comm. (2000), 88 Ohio St.3d 54, 723 N.E.2d 573, where the Supreme Court of Ohio applied Louisiana Pacific and found that, notwithstanding the fact that the employee's allowed conditions may have caused him to be disabled, it was his knowing violation of a work rule — not his allowed conditions — that caused him a total loss of earnings. Under those circumstances, the court held, the employee is ineligible for TTD compensation.
 {¶ 13} The commission argues that, contrary to the magistrate's apparent position, a later finding that relator was rendered temporarily and totally disabled by her allowed conditions for the relevant time period is not inconsistent with a finding that her loss of earnings from October 24, 2002 was due not to her disability but to her voluntary abandonment of the employment. In other words, it is not inconsistent to retroactively award TTD compensation and then terminate the same TTD compensation as of the date the employee was fired for violation of a work rule.
 {¶ 14} In its objections ODRC echoes the arguments of the commission and also argues that the magistrate has impermissibly added a fourth prong to the three-prong test for voluntary abandonment found in Louisiana Pacific. That is, under the magistrate's rationale, in order to find a voluntary abandonment, one must find that the claimant was not disabled due to the allowed conditions at the time of his or her discharge. ODRC argues that the claimant's disability status is irrelevant to the determination of voluntary abandonment.
 {¶ 15} ODRC points out that this case is similar to the situation presented in State ex rel. Ashcraft v. Indus. Comm.
(1987), 34 Ohio St.3d 42, 517 N.E.2d 533. In that case, the claimant received TTD compensation through September 14, 1980, but was subsequently incarcerated in West Virginia on a first-degree murder charge. He was convicted and remained incarcerated. On April 6, 1981, he filed a motion seeking TTD compensation from September 14, 1980 through March 23, 1981, and submitted the reports of two treating physicians who opined that the claimant remained temporarily and totally disabled throughout the time period for which he sought TTD compensation. The commission found the claimant had voluntarily abandoned his employment by virtue of his incarceration, and the court of appeals denied the claimant a writ of mandamus.
 {¶ 16} On appeal to the Supreme Court of Ohio, that court cited with approval this court's opinion in State ex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985),29 Ohio App.3d 145, 29 OBR 162, 504 N.E.2d 451, in which we held, in pertinent part:
A worker is prevented by an industrial injury from returning to his former position of employment where, but for the industrial injury, he would return to such former position of employment. However, where the employee has taken action that would precludehis returning to his former position of employment, even if hewere able to do so, he is not entitled to continued temporarytotal disability benefits since it is his own action, rather thanthe industrial injury, which prevents his returning to suchformer position of employment.
Id. at syllabus. (Emphasis added.)
 {¶ 17} In Ashcraft the claimant argued that Jones Laughlin did not apply because, whereas in Jones Laughlin
the claimant's disability status was a matter of some dispute, inAshcraft the medical professionals unanimously opined that the claimant was temporarily and totally disabled. But the Supreme Court of Ohio rejected that argument and stated that Jones Laughlin makes it clear that the issue whether the claimant was temporarily and totally disabled at the time of the alleged voluntary abandonment is not material to the voluntary abandonment determination. The Supreme Court noted:
The crux of [the Jones Laughlin] decision was the court's recognition of the two-part test to determine whether an injury qualified for temporary total disability compensation. The first part of the test focuses upon the disabling aspects of the injury, whereas the latter part determines if there are any factors, other than the injury, which would prevent the claimant from returning to his former position. The secondary consideration is a reflection of the underlying purpose of temporary total disability compensation: to compensate an injured employee for the loss of earnings which he incurs while the injury heals. When a claimant has voluntarily removed himself from the work force, he no longer incurs a loss of earnings because he is no longer in a position to return to work.
Ashcraft, supra, at 44. (Citations omitted.)
 {¶ 18} In other words, even where, as here, the employee would be unable to return to the former position due to the allowed conditions in the claim had he or she not been terminated, this does not nullify the disqualifying effect of a termination that is based on a violation of a known work rule and that meets the three-part test for voluntariness set forth inLouisiana-Pacific.
 {¶ 19} ODRC also directs our attention to the case of Stateex rel. Cobb v. Indus. Comm. (2000), 88 Ohio St.3d 54,723 N.E.2d 573. In that case, the claimant submitted to a company physical and tested positive for illicit drug use while he wasreceiving TTD compensation for an industrial injury. He was fired for violating the employer's drug policy, whereupon his TTD compensation was terminated. His subsequent attempts to have his TTD compensation reinstated were unavailing. The Supreme Court of Ohio affirmed this court's denial of a writ of mandamus based upon simple application of the three-part test for voluntariness set forth in Louisiana-Pacific. The court gave no consideration to the fact that the claimant was disabled due to the allowed conditions at the time he was fired. Rather, the court ended its opinion by noting that the claimant could have prevented the termination by refraining from drug use.
 {¶ 20} ODRC argues that Ashcraft and Cobb illustrate that the mere fact that one is temporarily and totally disabled and, as a result thereof, may be receiving or authorized to receive TTD compensation as a result, does not preclude a finding of voluntary abandonment. In other words, disability status is irrelevant to a voluntary abandonment determination, and the magistrate erred in making disability status an additional part of the analysis.
 {¶ 21} In response to respondents' objections, relator argues that the magistrate correctly determined that it was relator's allowed conditions — not her violation of a work rule and consequent termination — that caused her loss of wages. She directs our attention to the case of State ex rel. Walters v.Indus. Comm., 10th Dist. No. 01AP-1043, 2002-Ohio-3236, in which this court pointed out that, "the crucial question for the commission is the causation of the loss of wages — whether the loss resulted from the exercise of free choice or from his allowed conditions." Id. at ¶ 28.
 {¶ 22} Citing other cases such as State ex rel. PrettyProducts, Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5,670 N.E.2d 466, and State ex rel. Pinson v. Indus. Comm.,155 Ohio App.3d 270, 2003-Ohio-6074, relator argues that her termination was not voluntary because it was caused by her allowed conditions and not her own free choice. Thus, she contends, her termination should not be deemed to have caused her loss in wages; rather, because her allowed conditions caused her loss in wages she should have been granted TTD compensation therefor.
 {¶ 23} However, though her allowed conditions may have caused her absence from work (as Dr. Spare's C-84 seems to support), she fails to explain how her allowed conditions were the cause of her failure to contact her employer regarding her absence. The record reveals that it was not the absence alone that resulted in relator's termination, but her failure to contact the employer for many weeks, including after she received a specific written request for absence-related information. This failure to contact cannot be blamed on the allowed conditions.
 {¶ 24} Unlike the magistrate, we conclude that relator's termination meets the test for voluntary abandonment articulated in Louisiana-Pacific. We agree with the commission that there is nothing in Louisiana-Pacific or its progeny that precludes finding that a claimant was otherwise entitled to TTD compensation for a period up to and including termination for violation of a work rule, and a simultaneous finding that the same TTD compensation should be cut off as of the date of termination when that termination was previously deemed to constitute a voluntary abandonment of employment. We also agree with ODRC that the magistrate erred in finding that because relator was determined to have been temporarily and totally disabled by her allowed conditions for the time period surrounding her termination, the termination cannot, as a matter of law, be found to have been voluntary.
 {¶ 25} As we stated in Jones Laughlin, "where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position." In other words, disability status is irrelevant to a determination whether a termination constituted voluntary abandonment.
 {¶ 26} In this case, it was relator's failure to contact her employer regarding her absence that ultimately caused her to be terminated. Relator does not dispute that she was aware of the rule prohibiting a No Call/No Show for three consecutive working days, and she admits having received the September 18, 2002 letter from her employer, yet she never provided any request for approved leave, and never informed her employer of the reasons for her absence or whether she even wanted to continue her employment relationship. Thus, it was her own inaction — not her allowed conditions — that caused her loss of earnings.
 {¶ 27} Accordingly, the rationale employed in Ashcraft andCobb applies with equal force in this case. See, also, Stateex rel. Daniels v. Indus. Comm., 99 Ohio St.3d 282,2003-Ohio-3626, 791 N.E.2d 440 (termination for violation of company's No Call/No Show policy after being released to return to work by treating physician is a voluntary abandonment and precludes receipt of TTD compensation for the period following such termination); State ex rel. Hammer v. Indus. Comm.,99 Ohio St.3d 334, 2003-Ohio-3960, 792 N.E.2d 184 (claimant fired for violation of company's sexual harassment policy after returning to work from TTD-based absence due to industrial injury, was properly denied further TTD compensation).
 {¶ 28} For all of the foregoing reasons, we sustain the commission's and ODRC's objections, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, except to the extent that the conclusions of law are inconsistent with our discussion, and we deny the requested writ of mandamus.
Objections sustained;
 writ of mandamus denied.
Mcgrath and Travis, JJ., concur.
 (APPENDIX A.) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Karen Ebersole, : Relator, : v. : No. 05AP-302 Industrial Commission of Ohio : (REGULAR CALENDAR) and Ohio Department of Rehabilitation : Corrections, : Respondents. :
 MAGISTRATE'S DECISION Rendered on September 16, 2005. Philip J. Fulton Law Office, and Jacob Dobres, for relator.
Jim Petro, Attorney General, and Shawn M. Wollam, for respondent Industrial Commission of Ohio.
Lee M. Smith Associates Co., L.P.A., Kyle D. Martin andLee M. Smith, for respondent Ohio Department of Rehabilitation and Correction.
 IN MANDAMUS {¶ 29} Relator, Karen Ebersole, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for temporary total disability ("TTD") compensation on the basis that relator had voluntarily abandoned her employment and ordering the commission to find that she is entitled to that compensation for the reasons that she did not voluntarily abandon her employment and that she is medically qualified for such compensation.
Findings of Fact:
 {¶ 30} 1. Relator sustained a work-related injury while employed with respondent Ohio Department of Rehabilitation and Corrections ("employer") on December 20, 1998. Relator's claim was assigned claim number 98-616157 and was allowed for "left knee sprain/strain; left knee meniscus tear; post traumatic stress disorder; chondromalacia patellae left; tear lateral meniscus knee left; tear medial meniscus left knee." Relator was ultimately able to return to work. However, on June 21, 2001, relator sustained another work-related injury. Relator's second claim was assigned claim number 01-830395 and was allowed for "left medial collateral sprain." Relative to this second injury, relator received TTD compensation from January 31 to May 22, 2002. At that time, TTD compensation was terminated based upon a determination that relator had reached maximum medical improvement ("MMI") for the allowed condition "left medial collateral sprain."
 {¶ 31} 2. Relator initially appealed the commission's determination to terminate her TTD compensation relative to the 2001 claim; however, that appeal was dismissed by relator's counsel.
 {¶ 32} 3. By letter dated September 18, 2002, Gordon A. Lane, Warden of North Central Correctional Institution, informed relator that she had been absent from work since January 30, 2002. Mr. Lane also indicated the employer was aware that relator's appeal from the commission's order finding that she had reached MMI had been dismissed. As such, relator was informed: "At this time, you are not on approved leave and may be considered Absent Without Leave (AWOL)." Mr. Lane indicated that relator was required to do one of the following by September 25, 2002:
• File a request for leave detailing the nature of the absences and request use of any/all leave balances. You must provide supporting documents.
• Request a leave of absence and submit supporting documents.
• Should you decide that you do not wish to return to work, I would accept your written resignation.
Relator was further informed that her failure to file the appropriate documentation would result in an investigation and review of her possible violations of the employer's job rules.
 {¶ 33} 4. Relator requested an extension of time to respond. That request was denied. Relator failed to comply with any of the requests contained in the September 18, 2002 letter.
 {¶ 34} 5. As indicated by the September 18, 2002 letter, once relator failed to comply with the requests, a pre-disciplinary conference was scheduled and held on October 3, 2002.
 {¶ 35} 6. According to the hearing officer's report, relator presented the following relevant evidence at the pre-disciplinary conference:
Mr. Yoder summarized the findings as follows: (1) Ms. Ebersole has been absent from work since 1-30-2002; (2) She has been in a no pay status since the BWC declared she had reached MMI. This places her in an AWOL status since that time; (3) In July, her attorney withdrew the request for a hearing in appeal of the BWC decision; (4) Ms. Ebersole failed to meet the demands of the certified letter by 9-25-2002 and has still not met them as of today (10-03-2002).
Relator appeared at the pre-disciplinary conference and presented the following defense: she responded to the warden's letter on September 25, 2002; Jan Tripp had told her not to return to work on January 30, 2002, but would not tell her why; relator denied reinjury to her knee at work and indicated that she should not have been removed from work; the information indicating that she had reached MMI in May 2002 was inaccurate; she has only been MMI since September 2002; and she intended to refile her appeal from the decision that she had reached MMI. Relator was then asked whether she had received the certified letter from the warden dated September 18, 2002 and relator indicated she had. In response to why she failed to comply with the request in the letter, relator responded as follows: "She stated that she did not understand and that is why she wrote the letter to the warden." The pre-disciplinary hearing officer ultimately made the following findings:
I believe these points are very clear: (1) Ms. Ebersole has been absent since 1-31-2002. Since she was receiving BWC payment then her absence is not considered AWOL. Ms. Ebersole allegedlycalled in on 1-31-2002 to report that she would not be back towork and would also not be calling in again. (2) Ms. Ebersole reached MMI (maximum medical improvement) in May of 2002. Mr. Yoder stated that she had been in a no pay status and consequently in an AWOL status since May. Ms. Ebersole had filed an appeal of the BWC decision and during the appeal it is plausible to consider her still on an approved leave status. Itis still the responsibility of Ms. Ebersole to inform NCCI of thestatus of her absence and any new developments. Ms. Ebersole madeno effort to inform NCCI of her status. (3) Ms. Ebersole's attorney withdrew the appeal in July of 2002. Ms. Ebersole could be considered AWOL since that time because she no longer was receiving BWC benefits nor was she engaged in the appeal process.Again, it is the responsibility of the employee to notify theemployer of this development; however, Ms. Ebersole did notnotify NCCI.
In reviewing all the information presented at this hearing and also taking into account the information provided by Ms. Tripp on 10-4-2002, it appears Ms. Ebersole has demonstrated a pattern of continued failure to notify the employer of the status of her absence. During this hearing she made every effort to blame the employer for not allowing her to work and for allowing her to be off for so long without taking action. It is the responsibility of the employee to keep the employer abreast of the reasons for and the status of any absence.
The focus of this hearing was to determine if there is just cause for the charge of Job Abandonment. Based on all evidence presented and considered, there is insufficient evidence to support the charge of being AWOL since August of 2002. Nevertheless, I will focus on the dates since 9-25-2002.
The description of Rule #04 Job Abandonment is three or moreconsecutive workdays without proper notice. Ms. Ebersole was sent a certified letter dated 9-18-2002 in which was outlined very specific actions which she was ordered to meet by 9-25-2002. Ms. Ebersole did not comply with any of the actions specified by 9-25-2002 and had still not complied as of 10-3-2002. This means that from 9-25-2002 until the time of this hearing she has been AWOL. This represents a violation of Rule #04.
(Emphasis sic.)
 {¶ 36} 7. In a C-9 dated October 11, 2002, relator's treating physician, Antonio Rosario, M.D., requested authorization for left knee arthroscopy and post-operative physical therapy at a rate of three times per week for six to eight weeks in the 1998 claim. CompManagement Health System approved the surgery and Dr. Rosario ultimately performed a left knee arthroscopy on November 1, 2002.
 {¶ 37} 8. Dr. Rosario completed a C-84 on October 29, 2002 certifying relator as being temporarily and totally disabled as a result of the allowed conditions in the 1998 claim from May 2, 2002 to January 31, 2003.
 {¶ 38} 9. Relator's request for TTD compensation was heard before a district hearing officer ("DHO") on July 7, 2003. The DHO denied relator's request for TTD compensation based upon a finding that she had voluntarily abandoned her position of employment when she failed to comply with the September 18, 2002 letter and indicated that relator had failed to provide a justifiable reason for her noncompliance. The DHO specifically found that relator had failed to inform the employer of the status of her absences subsequent to the finding of MMI and this was a violation of the Revised Standards of Employee Conduct.
 {¶ 39} 10. Relator filed an appeal from the DHO's order and the matter was heard before a staff hearing officer ("SHO") on November 10, 2003. The SHO agreed with the DHO finding that relator's "actions constituted voluntary abandonment as of 10/24/2002, and based on a finding of voluntary abandonment temporary total benefits are not payable as of 10/24/2002." The SHO provided the following analysis pursuant to the voluntary abandonment rule of State ex rel. Louisiana-Pacific Corp. v.Indus. Comm. (1995), 72 Ohio St.3d 401:
In the instant case the claimant is found to have violated these standards and thus voluntary abandonment is established for the following reasons.
The claimant was sent a certified letter dated 09/18/2002 that she received from Gordan [sic] A. Lane, the warden of the facility where she worked. This letter stated to claimant that she was not on approved leave and would be considered absent without leave (AWOL) unless she took one of the following actions: 1) filed a request for leave detailing the nature of her absences and request use of any/all leave absences with supporting documents, 2) request a leave of absence and submit supporting documents, and 3) should claimant decide she did not want to return to work, she should submit her resignation. The letter stated that at least one of these steps had to be submitted to the employer by 09/25/2002. The letter further stated that failure to take one of these steps will necessitate an investigation and review of possible violations of the Standards of Employee Conduct, specifically rule number four of these standards, entitled Job Abandonment. This rule involved three or more consecutive work days without proper notice. Finally, the letter stated a violation of this rule could result in claimant's job removal. The claimant had signed a document dated 11/13/2001 that she received and would read this Revised Standards of Employee Conduct for the Ohio Department of Rehabilitation and Correction.
The claimant in response to this letter e-mailed her employer on 09/24/2002 requesting an extension of the 09/25/2002 deadline. This request was denied. The claimant also wrote to Mr. Lane on 09/25/2002. However, her 09/25/2002 letter did not comply with any of the three stated reply actions.
The claimant was terminated from her job on 10/24/2002 for violation of the aforementioned Department Rule number four. Previously, per a 10/21/2002 Predisciplinary Conference finding, Mr. Cowart, a Hearing Officer, ruled that claimant violated Department Rule four when she did not properly respond to Mr. Lane's 09/18/2002 letter. Later, the claimant filed a grievance in response to her removal. Based on that grievance, Mr. Stein, an Arbitrator per a 08/20/2003 ruling found that claimant had failed to fulfill her obligation to secure a proper leave of absence.
Based on the aforementioned review the Staff Hearing Officer concludes that the claimant by failing to properly respond to Department Rule four did voluntarily abandon her job. The claimant was previously aware of a written work rule that was identified by the employer as a dischargeable offense, thus, her failure to properly respond to Mr. Lane's 09/18/2002 letter satisfied the three requirements necessary to establish voluntary abandonment.
 {¶ 40} 11. The SHO then addressed the issue of whether or not relator was entitled to the payment of TTD compensation preceding her termination from May 23 through October 23, 2002, and concluded that relator was entitled to that compensation as follows:
While the claimant is not entitled to temporary total benefits as of 10/24/2002 because of the finding herein of voluntary abandonment, there remains the question of claimant's entitlement to disability from 05/23/2002 through 10/23/2002.
In support of this disability period the claimant submitted two C-84s. The first C-84 dated 06/13/2002 disabled claimant based on ICD Codes 836.0, 836.1, and 836.2. These codes refer to tears of the medial and lateral meniscus, which are allowed conditions. The second C-84 dated 10/29/2002 certified disability again based on ICD Codes 836.0 and 836.1 referring to the allowed tears of the medial and lateral meniscus.
While this Staff Hearing Officer realizes that as indicated below there are questions about the validity of the actual existence of the meniscus tears, at present tears of the left medial and lateral meniscus are allowed conditions, and because these C-84s do certify disability over the aforementioned period due to the allowed meniscus tears, temporary total benefits from 05/23/2002 through 10/23/2002, inclusive, are ordered paid.
 {¶ 41} 12. Both the employer and relator filed notices of appeal from the SHO order and those appeals were refused by order of the commission mailed January 7, 2004.
 {¶ 42} 13. Relator's request for reconsideration was denied by commission order mailed April 16, 2004.
 {¶ 43} 14. On December 30, 2003, relator filed a new motion requesting TTD compensation based upon Dr. Spare's certification that she was disabled due to the allowed condition of post traumatic stress disorder from May 21, 2002 through April 1, 2004. Relator's motion was heard before a DHO on March 8, 2004 and was denied. The DHO relied upon the previous finding that relator had voluntarily abandoned her employment and that TTD compensation from October 24, 2002 forward remained denied and barred due to relator having voluntarily abandoned her employment.
 {¶ 44} 15. Relator appealed and that matter was heard before an SHO on April 12, 2004. The SHO affirmed the prior DHO order and concurred that, based upon her voluntary abandonment of her employment, TTD compensation was not payable from October 24, 2002 through April 1, 2004.
 {¶ 45} 16. Relator's further appeal was refused by order of the commission mailed June 4, 2004.
 {¶ 46} 17. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 47} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 48} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 49} In this mandamus action, relator contends that the commission abused its discretion by improperly applying the voluntary abandonment doctrine to bar the payment of TTD compensation from October 24, 2002 forward.
 {¶ 50} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A); State exrel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 51} In the present case, the question is whether or not relator's discharge from employment constitutes a "voluntary abandonment" of her employment as defined by Louisiana-Pacific
and its progeny, which barred subsequent payment of TTD compensation. Where an employee's own actions, for reasons unrelated to the injury, preclude her from returning to her former position of employment, she is not entitled to TTD compensation, since it is the employee's own actions rather than the injury that precludes a return to the former position of employment. See State ex rel. Jones Laughlin Steel Corp. v.Indus. Comm. (1985), 29 Ohio App.3d 145. When determining whether an injury qualifies for TTD compensation, the court utilizes a two-part test. The first part of the test focuses on the disabling aspects of the injury. The second part of the test determines if there are any factors, other than the injury, which prevent claimant from returning to her former position of employment. See State ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42. However, only a voluntary abandonment precludes the payment of TTD compensation. State ex rel. RockwellInternatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44. As such, voluntary abandonment of the former position of employment can, in some instances, bar eligibility for TTD compensation.
 {¶ 52} A firing can constitute a voluntary abandonment of the former position of employment when the firing is a consequence of behavior which claimant willingly undertook. See State ex rel.Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118. The rationale for this is that a person is deemed to tacitly accept the consequence of their voluntary acts.
 {¶ 53} In Louisiana-Pacific, the claimant failed to report to work on three consecutive days without calling. He was dismissed pursuant to a written plant policy. When asked to characterize the departure as voluntary or involuntary, for purposes of TTD compensation, the court determined that, a termination constitutes "voluntary abandonment" when the termination stemmed from the violation of a written work rule or policy that: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known by the employee.
 {¶ 54} Relator argues that she could not have voluntarily abandoned her employment where she was not, at the time of the alleged voluntary abandonment, capable of returning to her former position of employment.
 {¶ 55} In September 2002, when the employer contacted relator regarding her work status, there was no evidence that relator was unable to work due to the allowed conditions in the 1998 claim. Further, in the time period following the commission's finding that the injuries she sustained in the 2001 claim had reached MMI, relator had failed to submit any medical evidence to her employer at all. As such, when the employer initiated disciplinary action against relator, the employer had no evidence that relator was experiencing any problems, let alone disability, as a result of any of her allowed conditions. Relator failed to timely respond to the September 18, 2002 letter; however, before the employer could officially terminate relator, relator was provided a pre-disciplinary conference pursuant to the terms of a collective bargaining agreement. That hearing was held October 3, 2002. A review of the report shows that relator never even argued that her 1998 injuries had "flared-up" and rendered her unable to work. As such, it was determined that the employer had "just cause" to terminate relator.
 {¶ 56} Later, in her request for TTD compensation before the commission, relator, for the first time, presented evidence that she was disabled as of May 23, 2002, as a result of the allowed conditions in the 1998 claim. The SHO found this medical evidence to be credible and determined that as a result of the allowed conditions in the 1998 claim, relator had been temporarily totally disabled as of May 23, 2002 and continuing to October 2002. The only reason the SHO terminated the TTD award was because of a finding that relator thereafter voluntarily abandoned her employment as of October 24, 2002.
 {¶ 57} This begs the question: How can an employee who is currently[1] temporarily and totally disabled voluntarily abandon their employment and consequently suffer a denial of continued TTD compensation? The evidence shows the employer had a valid reason to terminate relator's employment; however, does every valid termination equate with a loss of entitlement to TTD compensation? The rationale behind Louisiana-Pacific is that the employee's own actions, and not the allowed conditions, cause the employee to be without wages. Here, relator has lost wages for two reasons: (1) the commission determined she was temporarily totally disabled as a result of the allowed conditions; and (2) she refused to respond to the employer's request for information and was legitimately terminated for reasons unrelated to the allowed conditions.[2]
 {¶ 58} Although none of the case law is directly on point, the magistrate finds that the Ohio Supreme Court's analysis of the voluntary abandonment doctrine leads to the conclusion that the commission did abuse its discretion when it found relator's termination barred TTD compensation after October 23, 2002. In the present case, the commission determined that relator presented sufficient evidence of disability to warrant a finding that she was temporarily totally disabled as of May 23, 2002 and continuing up to and arguably beyond the date of her termination.
 {¶ 59} In Coolidge v. Riverdale Local School Dist.,100 Ohio St.3d 141, 2003-Ohio-5357, the court held that an employee who is currently receiving TTD compensation pursuant to R.C.4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition(s). The court found such action to be contrary to public policy. In Coolidge, the employer tried arguing that the worker was actually discharged for her failure to keep the employer notified of her continuing disability despite requests from the employer for such information. The court found that the employer could not validly make that argument because the employer already knew of the reasons for the worker's absence.
 {¶ 60} In the present case, while relator was not actually receiving TTD compensation at the time of her discharge, the commission later determined she was entitled to that compensation both before and at the time she was discharged. Further, here the employer did not know nor could the employer have known that relator was temporarily totally disabled at the time of her discharge. As such, contrary to Coolidge, the magistrate finds that relator's discharge does not violate public policy. However, although the employer established a valid reason to discharge relator, that discharge, in and of itself, does not constitute a "voluntary abandonment" pursuant to Louisiana-Pacific in this case because of the commission's finding that relator was temporarily totally disabled at the time she was discharged.
 {¶ 61} Accordingly, it is the magistrate's decision that a writ of mandamus should issue ordering respondent commission to vacate its orders denying relator TTD compensation as of October 24, 2002 on the basis of a finding of voluntary abandonment and the commission must examine the medical evidence and determine whether nor not, and to what extent, relator is entitled to TTD compensation.
[1] The commission's order "back-dated" the TTD award so relator was technically temporarily totally disabled when she was fired.
[2] At the time of the pre-disciplinary conference, there was no evidence of any disability.